[Crim. No. 11038.   Second Dist., Div. Four.   Dec. 27, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. ALFEGO PADILLO BACA, Defendant and Appellant.

Donald F. Pitts, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Suzanne I. Eisenberg, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged in two counts with an assault with a deadly weapon on the persons of two police officers, in violation of "section 245(b)" of the Penal Code. Two prior felony convictions were alleged. He admitted the priors, pled not guilty and, after a trial by jury, was found guilty of "Assault by Means of Force Likely to Produce Great Bodily Injury, in violation of Section 245, Penal Code of California, a felony, a lesser and necessarily included offense." Probation was denied,[1] and a state prison sentence was imposed. The judgment of conviction reads (so far as here material) in the same terms as the verdicts, namely: ". . . defendant having been duly found guilty in this court of the crime of ASSAULT BY MEANS OF FORCE LIKELY TO PRODUCE GREAT BODILY INJURY (Sec 245 PC), a felony, a lesser

---

[1] No motion for new trial was made.

offense than that charged in each of the Counts 1 and 2 of the information but necessarily included therein. . . ."

Appointed counsel raises two issues:

(1) That the evidence does not support the verdict;

(2) That it appears that there was a reasonable doubt in the mind of the jury as to what offense, if any, defendant had committed and that, therefore, he should have been convicted of a lesser offense.

In addition, at the request of defendant, counsel raises a contention of prejudicial misconduct on the part of the prosecuting attorney in his argument to the jury.[2]

I

■ The evidence for the People was to the effect that police officers, on patrol, observed a speeding automobile. They gave chase, using their red spotlight and siren. The automobile proceeded, at a high rate of speed, making several turns, until it collided with a house. Defendant got out of the car and ran away. The officers pursued him, apprehended him, but, while a routine weapon search was being made, defendant began to fight, with the result that both officers were seriously injured.

Testifying in his own defense, defendant claimed that a person named "Bob" was driving the car; that Bob ran away after the collision with the house; that defendant also ran; that one officer made an unprovoked attack on him during the weapon search; that his actions thereafter were solely in self-defense to prevent the further use of unlawful force.

It is obvious that the evidence for the People, if believed by the jury, was amply sufficient to support a conviction of the offense as charged. We are without power to reweigh the evidence.

II

Section 245 of the Penal Code is in two subdivisions, and, at the time of the offense herein involved, read (so far as is here material) as follows: "(a) Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison not exceeding 10 years, or in a county jail not exceed-

---

[2]In order properly to consider the various issues raised by counsel, we have augmented the record by an examination of the superior court file, including the instructions given and refused and the verdict forms hereinafter discussed. We also ordered the record augmented by inclusion of the arguments of both counsel.

ing one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment. . . .

" (b) Every person who commits an assault with a deadly weapon or instrument or by any means likely to produce great bodily injury upon the person of a peace officer, and who knows or reasonably should know that such victim is a peace officer engaged in the performance of his duties, when such peace officer is engaged in the performance of his duties shall be punished by imprisonment in the state prison not exceeding 10 years; provided, that if such person has previously been convicted of a felony under the laws of this state or has previously been convicted of an offense under the laws of any other state or of the United States which, if committed in this state, would have been punishable as a felony, he shall be punished by imprisonment in the state prison for not less than 5 nor more than 15 years."

The trial court instructed the jury on the elements of simple assault and on the elements of subdivision (b) of section 245; it was not requested to, and did not, instruct on the elements of subdivision (a) of section 245. The instructions also covered the matter of lesser and included offenses and the court specifically instructed the jury that there were two such possible lesser and included offenses, namely (a) "assault by means likely to produce great bodily injury upon the person of a police officer"[3] and (b) "simple assault, a misdemeanor." The possibility of a verdict finding defendant guilty, under subdivision (a) of section 245, of the offense of "assault by means likely to produce great bodily injury" upon a person other than a police officer was not included in the instructions. The instructions also covered the law of arrest and the law of self-defense, and told the jury that, in determining whether or not the officers were properly engaged in the performance of their duties (an essential element under

---

[3]Examination of the superior court file discloses that this instruction was endorsed "given as requested" but there is no indication as to which party had requested it. No objection to the instruction was made, by either party, at any stage of the case. While there are cases in which an instruction on an obviously unrelated offense may be reversible error in a jury case (consult *People* v. *Leech* (1965) 232 Cal.App.2d 397 [42 Cal. Rptr. 745]), this is not such a case. Here, the offense involved was that of aggravated assault on a police officer—an offense which, under the statute as quoted above, may be committed in either of two ways; by use of deadly weapon, or by use of force likely to cause great bodily harm. The present case, therefore, is governed by the principles expounded in *People* v. *Collins* (1960) 54 Cal.2d 57 [4 Cal.Rptr. 158, 351 P.2d 326], and not by those set forth in *Leech*.

subdivision (b)) they should consider the manner of arrest and the amount of force used.[4]

The jury was given three forms of guilty verdict: one dealing with assault with a deadly weapon; one dealing with assault by means likely to produce great bodily injury; and one for simple assault. None of the forms contained any reference to the status of the victim. After deliberation, the jury returned, having executed all three of these verdict forms. The trial court advised them of the impropriety of that procedure and directed them to return for further deliberations so that only one verdict would be returned.[5] In this connection, the court withdrew from the jury the issue of assault with a deadly weapon, stating that that form should not have been given to the jury, since the prosecuting attorney had conceded that there was no evidence that defendant had used a deadly weapon. Shortly thereafter the jury returned to the courtroom, expressing some confusion as to the matter of a deadly weapon. The court again, and more fully, instructed them to disregard that matter. The jury again retired, but returned a few minutes later and the following proceedings occurred:

"THE COURT: This is the matter of the People of the State of California versus Alfego Padillo Baca.

"Let the record show the jurors have returned and are in the jury box, the defendant is present with his counsel, Mr. Berg, the People represented by Mr. Fletcher.

"Mr. Foreman, I am not quite sure I understand what is meant by this question. Would you make the statement so it will be in the record, what it is that is troubling the jury, and if I can answer your question I will answer it.

"MR. BUFORD: Your Honor, there seems to be a question of assault on a policeman.

"Is that considered a deadly weapon?

"THE COURT: I thought I had made it quite clear that you

---

[4]No. 18: "It is for the jury to determine whether the arresting officers were properly engaged in the performance of their duties. The manner in which the arrest of defendant took place is a question of fact for the jury to determine."

No. 19: "In determining whether the arresting officers were properly engaged in the performance of their duties you may consider whether under the facts of this case they subjected the defendant to such restraint as was reasonable for his arrest and detention."

[5]No objection was made that the court's remarks might indicate an opinion that a verdict of guilty in some form should be returned. In light of the verdicts then before the court, all parties (correctly we believe) assumed that the possibility of an acquittal was no longer open.

should not concern yourselves with the question of whether or not a deadly weapon was involved. The People conceded that they had not introduced sufficient evidence for you to find that any assault with a deadly weapon was committed.

"To answer your question from an academic point of view, which is not really material to this case, the victim of the assault has nothing to do with the character of the weapon that is used. It's just as much an assault with a deadly weapon for me to go after you with a gun as it would be for me to go after a policeman with a gun. The character of the victim really should not concern the jury, except that the jury must be satisfied that the assailant, if there was an assailant, knew that the victim was a police officer and that he was in the performance of his duty; but the assault with a deadly weapon is committed regardless of who the victim is. But to find the defendant guilty of the charge here, as the charge does involve a policeman, you must find that the defendant knew that these men were policemen and that they were in the discharge of their duties, but it would have nothing to do as to your finding of the character of the assault.

"All there is for you to determine is, first, did the defendant know that the alleged victims were policemen, were they acting in the line of their duty; if they were, was an assault committed, and if there was an assault committed was that committed by means likely to produce great bodily injury.

"You should bring in one verdict on each count and you should disregard in your deliberations the question of deadly weapon, because the District Attorney has conceded the evidence was insufficient as to the use of a deadly weapon. If you have decided that an assault was committed then you should make a decision as to whether or not the assault was a simple assault or was an assault by means of force likely to produce great bodily injury, but forget about the matter of deadly weapon. Now, of course, you still must be satisfied that the defendant knew that they were police officers and that they were acting in the line of their duty, and there should be one verdict on each of the two counts. Is that clear now or not?

"Mr. Dariano?

"Mr. Dariano: May I ask a question, your Honor?

"Then there can be an assault against a policeman as well as anybody else?

"The Court: Yes, and there can be an assault with a deadly weapon and assault by means of force likely to produce great

494

bodily harm. The character of the victim has nothing to do with the assault. But in this particular charge, because of the nature of the charge involved, you must be satisfied that this defendant knew these men were policemen and were acting in the line of duty.

"Apparently you have reached that conclusion. At least the verdicts submitted here would indicate that. If that is correct the only remaining problem is for you to determine whether or not this was a simple assault or whether or not it was done by means of force likely to produce great bodily injury, and bring in your verdicts in that regard; you have to bring in one on each count."

The jury again retired, to return about one-half hour later with the verdicts in the form set forth above. Those verdicts, in that form, are neither clearly responsive to the charge in the information (which charged a violation of subdivision (b) of section 245) nor do they represent a clear finding of guilt of any particular offense known to our law. However, in the light of all of the circumstances of this trial, we conclude that the judgment based thereon, and cast in the same terms, may be corrected in this court into a form that is directly respon- sive to the information and capable of execution.[6]

Under the evidence, the jury could have concluded that the police officers had used no more force than was reasonably necessary to arrest and subdue Baca, in which case (of course) any use of force by him would have been unlawful. However, the evidence was such that the jury could have con- cluded that the officers had used more force than was neces- sary to accomplish their legitimate purpose, and that Baca had used, in turn, more force than was reasonably necessary to repel the officers' excessive force. In either of these situa- tions, their refusal to acquit was proper.

Secondly, the jury might have concluded that Baca's force, used to repel the force used by the officers (whether or not their force was excessive), was not only of the degree involved in simple assault but that it was markedly greater than that of simple assault. Under these circumstances, the jury's find- ing, as made, that Baca had used "force likely to produce

[6] A conviction of a violation of subdivision (a) is, as above indicated, punishable by a lesser term of imprisonment than is a conviction of a violation of subdivision (b). Hence a judgment in the form herein entered does not, on its face, give an intelligent direction to the Adult Authority in carrying out that body's function of fixing a definite sen- tence.

great bodily injury" was also proper; as we have said above, this was a legally permissible conclusion.

However, the charge was that of an assault upon "the person of a police officer," where the defendant knew or reasonably should have known that "such victim is a peace officer *engaged in the performance of his duties.*" (Italics added.) Defendant admitted that he knew that the persons who sought to arrest him were police officers, and there is no question that he knew that they were attempting to make an arrest—a legitimate "duty" of a police officer. The theory of the defense, accepted as we have seen by the trial court in the instructions above quoted in footnote number 4 was that an officer who uses more force than is reasonably necessary to effect his purpose ceases to be "engaged in the performance of his duties" as a police officer. ■■ ■■■ ■ If that theory is correct, then the jury should have been instructed as to the possibility of returning a verdict of a violation of subdivision (a).[7] As we have seen, no guidance on that point was ever given to them.

However, we conclude that this theory was incorrect and that the officers, even though they were using excessive force to subdue their suspect, were still "engaged in the performance of their duties" and that an assault upon them was punishable as provided in subdivision (b). If the victims were within the class described in subdivision (b) then it must follow that, if Baca had violated section 245 at all (and we have seen that the jury could lawfully have so found), he was guilty of a violation of subdivision (b).[8]

Search by counsel and by ourselves has disclosed no case squarely in point. In *Towle v. Mathews* (1900) 130 Cal. 574 [62 P. 1064], plaintiff had sued a constable and his bondsman for injuries sustained while deputy constables were attempting to arrest plaintiff. The trial court gave judgment for

---

[7] We think it clear that subdivision (a) of section 245 describes an offense which is both lesser and included within that described in subdivision (b). The only difference in the elements of the two offenses is that the crime denounced in subdivision (a) can be committed on any person whereas the crime denounced in subdivision (b) can be committed only upon the person of a peace officer. But, since peace officers are "persons," it follows that a violation of subdivision (b) must, of necessity, also constitute a violation of subdivision (a).

[8] Under these circumstances, while an instruction on subdivision (a) would not have been improper, it was not required. Consult the discussion of this point in *People v. Allison* (1966) 245 Cal.App.2d 568, 572-574 [54 Cal.Rptr. 148]; and in *People v. Morrison* (1964) 228 Cal.App.2d 707, 712, et seq. [39 Cal.Rptr. 874].

plaintiff, finding that the officers had "used excessive force, and more force than was necessary to be used by them in overcoming plaintiff's . . . resistance while making said arrest, and in using such excessive and unnecessary force at said time and place, acted wrongfully and negligently." The Supreme Court construed the findings as meaning only that the excessive force was intentionally used and, with the findings so construed, affirmed the judgment, holding that the officers, although using excessive force, were still acting as public officers for whose conduct their superior and his bondsman were liable. If a policeman is still acting as a policeman for the purposes of liability, even though he uses excessive force, it would seem only logical to conclude that he was also a policeman for the purposes of section 245 subdivision (b) under the same circumstances.

The offense proscribed by section 245 subdivision (b) is one created for the public benefit and any protection of the officers involved in any particular case is purely incidental. Ever since the adoption of Penal Code section 834a in 1957, it has been the policy of this state that a citizen, subjected to an attempted arrest by a known police officer, must submit quietly and settle his rights at the station and in the courts and not on the street corner. (Pen. Code, § 834a; *People* v. *Burns* (1961) 198 Cal.App.2d Supp. 839 [18 Cal.Rptr. 921].) In the *Burns* case the court said (at p. 841): "The section does not say that it is the duty of a person to refrain from using force only if he is being lawfully arrested. Rather, it requires him to refrain from using force whenever he has or should have knowledge that he is being arrested by a peace officer. The former rule inevitably led to riots and violence by fostering a belief on the part of many people that they were the sole judges as to whether their arrest was or was not proper. Those persons who were inclined to resist or escape found a ready excuse in stating that the resistance or escape was because of belief in the unlawfulness of the arrest."

The adoption of section 245 subdivision (b) in 1961 is an extension of the policy first set forth in section 834a. Not only must the person sought to be arrested refrain from using any force to resist an arrest by a known officer, but he is subjected to increased penalties if his unlawful resistance is aggravated in degree. The result is to reduce still further the possibility of street brawls occasioned by a claim that the officer was more forceful than the arrestee regarded as necessary and to leave that issue, like the issue of lawful arrest, to judicial and not to pugilistic settlement.

The problem before this court, then, is to determine what action it may take in the premises. ■ Since the two subsections of section 245 define separate offenses, we cannot rely on the provisions of section 1192 of the Penal Code, since that section applies only to offenses divided into degrees. ■ Nor can we rely on subdivision 6 of section 1181, since that provision applies only where the evidence shows defendant to be not guilty of the offense of which he was found guilty. Here, while the jury could have found defendant guilty of an offense lesser than that defined in subdivision (b) of section 245, still (as we have above pointed out) they could have found him guilty of a violation of that subsection. Nor is section 1260 of the Penal Code any more helpful. ■ The determination of guilt on conflicting evidence is for the trial court, and not for us.

The Attorney General's solution is for us to treat the improper form as a mere ''clerical'' error and either correct that error ourselves or reverse with instructions that the trial court make a ''clerical'' correction. ■ We conclude that, under the circumstances of this case, correction by this court is the appropriate course. Clearly, the jury had rejected both acquittal and the possibility of conviction of simple assault. As we have discussed above, the defense theory, as accepted by the trial court, was erroneous and, under the evidence, a verdict of guilty of subdivision (a), while legally proper, would have been a pure act of jury clemency. While, as we have said above, the final discussion between the trial court and the jury evidenced some initial confusion over the question of the victim's status, it seems clear that, at the end, the jury must have understood that, if they determined that the victims were police officers acting in the performance of their duty, they were to choose between two alternatives—simple or aggravated assault. The verdict ultimately returned can be understood only as evidencing their determination that the assault was of the aggravated degree. Under these circumstances, we may and should correct the judgment as entered by including the subdivision reference which the draftsman of the form had carelessly omitted. (*In re Basuino* (1943) 22 Cal.2d 247 [138 P.2d 297]; *People* v. *Flores* (1960) 177 Cal.App.2d 610 [2 Cal.Rptr. 363].)

## III

As we have indicated above, appointed counsel raises, as his client asked him to do, the issue of improper argument to the

jury. We have examined the arguments as made. Defendant complains of two matters: (1) that the prosecution argued to the jury that defendant was a vicious and violent person; and (2) that he pointed out to the jury that defendant had suffered prior felony convictions.

■ The second contention clearly is without merit. Defendant took the stand to testify in his own behalf. As permitted by section 2051 of the Code of Civil Procedure, the prosecution attacked his credibility by showing his prior felony convictions and the trial court, without objection, instructed the jury as to the effect of that showing.[9] Under these circumstances, the prosecuting attorney was merely presenting a permissible argument based on the record of the case.

■ The other contention is equally without merit. Defendant points to two places in argument where the prosecutor referred to defendant as "vicious." In the first instance, the argument was clearly proper. The prosecutor, arguing that the police officers should be believed and defendant disbelieved, said: "It appears from the evidence that this man, this defendant, Mr. Baca, is a rather vicious person." The comment followed an accurate recital of the injuries inflicted on the officers and limited, as it expressly was, to a deduction of counsel from the evidence, was quite legitimate argument.

■ A few lines further on, in concluding his argument the prosecutor said:

"He told Officer Steele he didn't want to go to jail. They made him mad. I guess because the officers were going to take him to jail. Being the vicious person that he is, he would rather fight than go to jail, he would rather fight than quit or fight than switch, whatever it is.

"Nevertheless, this is what he did here, rather than go to jail, being mad perhaps at being caught or the prospect of going to jail. These officers not being large men he must have weighed the consequences and thought it was worth the chance. He took the chance. He lost. Now he must pay. It's clear and simple." It is true that, this second time, the phrase "it appears from the evidence" is omitted. But no objection was made, either then or later, by trial counsel who, a reading of the entire record shows, had been alert to defend his client's rights. Apparently he concluded, as do we, that the inadvertent omission of the repetitious phrase "as shown

---

[9]The trial court gave CALJIC 52 (revised) and 54-B.

by this evidence" was not prejudicial. Absent proper objection in the trial court, the matter is unavailable here.

The judgment is corrected by striking out the parenthetical clause " (Sec. 245 PC) " and substituting therefor a parenthetical clause reading as follows: " (subd. (b) of section 245 of the Penal Code) "; as so corrected, the judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied January 16, 1967.