[Crim. No. 16519. In Bank. July 25, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE SERRATO et al., Defendants and Appellants.

## COUNSEL

Stephen E. Tallent, Gary D. Stabile, Don Parris, Robert A. Miller and Keith K. Hilbig for Defendants and Appellants.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FILES, J.**\*—Defendants Joe and Gloria Serrato were charged with a felony, possession of a fire bomb (Pen. Code, § 452, subd. (b)), and a jury found them guilty as charged.

In ruling upon defendants' motion for a new trial the court made an order purporting to modify the verdict to a conviction under Penal Code section 415. Proceedings were suspended and the court placed each defendant on two years probation, upon condition that each pay a fine of $125.

Defendants are appealing from the order granting probation, such an order being a judgment for the purpose of appeal. (Pen. Code, § 1237, subd. 1.)

On August 30, 1970, at about 12:55 a.m. sheriff's ,deputies on patrol in East Los Angeles received a radio report that at a specified address "there was a blue station wagon with Molotov cocktails in the back seat." They proceeded to the location and found a blue station wagon. Through a window the officers could see a paint thinner can and three bottles, at least one of which appeared to be a fire bomb, as defined in Penal Code section 452, subdivision (b).[1] The doors and windows of the car were closed and locked. Thereafter, defendants Joe and Gloria Serrato arrived and acknowledged that the car was theirs. Joe was carrying a key to the car.

Subsequent laboratory examination established that one of the bottles, which was glass, contained a flammable liquid with a flash point of 85 degrees Fahrenheit, and otherwise met the statutory definition of a fire bomb. The other two bottles, being plastic, did not come within the statute.

---

\*Assigned by the Chairman of the Judicial Council.

[1]Penal Code section 452, subdivision (b): "Every person who possesses, manufactures or disposes of a fire bomb is guilty of a felony.

" . . . . . . . . .

"For the purposes of this subdivision, a 'fire bomb' is a breakable container containing a flammable liquid with a flash point of 150 degrees Fahrenheit or less, having a wick or similar device capable of being ignited, but no device commercially manufactured primarily for the purpose of illumination shall be deemed to be a fire bomb for the purposes of this subdivision."

At the trial defendants produced six character witnesses and three other witnesses who testified about other persons who had been in the vicinity of the vehicle before the officers had arrived. Defendants were not called as witnesses and no evidence was produced either to contradict the testimony of the officers or to explain the presence of the bottles in the vehicle.

After the verdict of guilty had been returned, defendants retained new counsel, who made and argued a motion for a new trial upon the grounds of insufficiency of the evidence, errors of law in the trial, misdirection of the jury, and incompetence of trial counsel. Following oral argument of the motion, the trial court put the matter over for one week. At the resumed hearing, the court announced its ruling thus:

"Motion for new trial in this particular matter will be and is denied. In lieu thereof, the defendants Joe and Gloria Serrato will be found guilty of a violation of Section 415 of the Penal Code."

The court then addressed some comments to the defendants, and announced that "the sentence" would be two years of probation, subject to a fine of $125 each.

## I

The first contention made by defendants here is that the trial court had no jurisdiction to convict them of a violation of section 415.[2]

Penal Code section 1181, which governs the power of the trial court in ruling on a motion for a new trial, authorizes the trial court to modify the verdict to a lesser degree of the crime found by the jury, or to a lesser crime included therein.[3]

---

[2]Penal Code section 415: "Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood or person, by loud or unusual noise, or by tumultuous or offensive conduct, or threatening, traducing, quarreling, challenging to fight, or fighting, or who, on the public streets of any unincorporated town, or upon the public highways in such unincorporated town, run any horse race, either for a wager or for amusement, or fire any gun or pistol in such unincorporated town, or use any vulgar, profane, or indecent language within the presence or hearing of women or children, in a loud and boisterous manner, is guilty of a misdemeanor, and upon conviction by any court of competent jurisdiction shall be punished by fine not exceeding two hundred dollars, or by imprisonment in the county jail for not more than ninety days, or by both fine and imprisonment, or either, at the discretion of the court."

[3]Penal Code section 1181: "When a verdict has been rendered or a finding made against the defendant, the court may, upon his application, grant a new trial, in the following cases only:

"..................................................

"6. When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein,

The long-recognized test is "that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." (*In re Hess* (1955) 45 Cal.2d 171, 174 [288 P.2d 5].) It seems manifestly clear that a person may possess a bomb without engaging in any of the offensive conduct which falls within the ambit of section 415. Indeed, the evidence in this case illustrates the principle. So far as the evidence shows, defendants walked peaceably to the vicinity of their automobile, where they engaged in conversation with the officers. Such evidence as there was on the subject indicates defendants disturbed no one.[4]

■ The trial court's action not only exceeded its statutory authority, it also violated a constitutional principle. "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*In re Hess, supra,* 45 Cal.2d at p. 175.) Since the accusatory pleading alleged nothing more than a violation of Penal Code section 452, subdivision (b), there was no notice to the defendants that they might be convicted of disturbing the peace.

The Attorney General argues that the conviction can be upheld upon a theory of consent, and calls attention to a colloquy which occurred in the trial court immediately after defendants' attorney had argued in support of the motion for new trial:

"THE COURT: Very well. And thank you, counsel. May I ask you one further thing: Would you concede and be prepared to stipulate that perhaps Section 415 of the Penal Code is a reasonably-related offense under People v. West?

"MR. TALLENT: [Attorney for defendants] I would be prepared to say that's reasonably related, yes.

"THE COURT: Would you be prepared to accept that stipulation, if required, Mr. Watson?

"MR. WATSON: [Deputy District Attorney] Yes, your Honor.

"THE COURT: Very well."

---

the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the case may be appealed;"

[4]The testimony of one of the arresting officers includes this: "Q. [By Mr. Watson, deputy district attorney] Have you known the Serratos before that day? A. No. Q. Was there any unpleasantness between you and the Serratos that night? A. No sir. Q. I mean they didn't become unruly and yell or scream or anything of that nature, did they? A. No sir."

Section 415 was not mentioned again in the trial record until the court, at a subsequent session, announced its ruling on the motion for a new trial.

*People* v. *West* (1970) 3 Cal.3d 595 [91 Cal.Rptr. 385, 477 P.2d 409], referred to by the trial court, offers no support for what the trial court did here. The *West* case deals with guilty pleas, particularly those arrived at by negotiation between the prosecution and the defense. The opinion points out that notwithstanding the rule that a defendant may not be convicted of an offense not included within the charge, his guilty plea to a "lesser offense reasonably related to the offense charged" may be valid. The opinion explains at page 612: "A defendant who knowingly and voluntarily pleads guilty or nolo contendere can hardly claim that he is unaware that he might be convicted of the offense to which he pleads; his plea demonstrates that he not only knows of the violation but is also prepared to admit each of its elements."

Neither the holding nor the reasoning of *West* authorizes a trial court to convict a defendant of an uncharged offense without his consent. The record contains no showing that either the defendants or their attorneys consented to a conviction of any offense.

Since the conviction of defendants for a violation of Penal Code section 415 was neither charged in the accusatory pleading nor found by the jury nor consented to, it cannot stand. (See *People* v. *Wilson* (1969) 271 Cal. App.2d 60 [76 Cal.Rptr. 195].)

## II

It thus becomes necessary to determine what the superior court may do after the judgment is reversed and the case is remanded for further proceedings. It is defendants' contention that they are now entitled to a dismissal or a judgment of acquittal. They argue that the ruling of the trial court, in modifying the verdict, amounted to an implied acquittal of the offense charged,[5] so that further proceedings against them on that charge are barred by the constitutional prohibitions against double jeopardy.[6]

It is a familiar principle that a defendant who has succeeded in having his conviction set aside impliedly waives any objection to being retried on the charge of which he was convicted. (See *Forman* v. *United*

---

[5]This subject was referred to, but not decided, in *People* v. *Wilson, supra,* 271 Cal.App.2d at pp. 64-65.

[6]United States Constitution, Fifth Amendment: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb; . . ."

California Constitution, article I, section 13: "No person shall be twice put in jeopardy for the same offense; . . ."

*States* (1960) 361 U.S. 416 [4 L.Ed.2d 412, 80 S.Ct. 481]; *People* v. *Tong* (1909) 155 Cal. 579 [102 P. 263].)

■ The argument of defendants here is based upon another well established rule: that where a trier of the facts finds the defendant guilty of a lesser degree of the offense charged, or of a lesser included offense, there is an implied acquittal of the greater offense. Where the trier of the facts—jury or court—has had a full opportunity to return a verdict on the greater charge, and returns some other verdict, the double jeopardy prohibition of both the federal and state Constitutions bars retrial on the greater offense. (See *Price* v. *Georgia* (1970) 398 U.S. 323 [26 L.Ed.2d 300, 90 S.Ct. 1757]; *Gomez* v. *Superior Court* (1958) 50 Cal.2d 640, 643 [328 P.2d 976]; *In re Hess, supra,* 45 Cal.2d at pp. 175-176.)

The same rationale applies when the trier of the facts returns a verdict finding the defendant guilty of an uncharged and nonincluded offense. (See *In re Hess, supra,* 45 Cal.2d at p. 176; *People* v. *Schumacher* (1961) 194 Cal.App.2d 335, 340 [14 Cal.Rptr. 924]; *People* v. *Harris* (1961) 191 Cal.App.2d 754 [12 Cal.Rptr. 916].)

The argument made by defendants here assumes that, since the trial court is authorized to reweigh the evidence in ruling upon a motion for a new trial, its order purporting to reduce the offense has the same effect as a jury verdict. This premise will not withstand analysis. By the same logic, an order of the trial court setting aside the entire verdict and granting a new trial upon the ground of insufficient evidence would be an "implied acquittal" of the entire charge.

In order to place the trial court's order in its proper legal context, it is necessary to examine the history and nature of the trial court's powers in passing upon a motion for a new trial.

■ Although the power of the court to grant a new trial upon the ground of insufficiency of the evidence was a part of the common law (see *Estate of Bainbridge* (1915) 169 Cal. 166 [146 P. 427]), the power of a California trial court to hear and decide a motion for a new trial in a criminal case is strictly limited to the authority granted by Penal Code section 1181. (*People* v. *Amer* (1907) 151 Cal. 303, 305 [90 P. 698].) Prior to 1927 the trial court was authorized only to grant or deny a new trial. The 1927 amendment added language in subdivision 6 empowering either the trial court or an appellate court to modify the judgment to a lesser degree or a lesser offense. In 1951 the section was amended to read as at present, authorizing the court to "modify the verdict, finding or judgment."

The purpose of these amendments was to obviate the necessity of a new trial when the trial court, on motion for a new trial, or an appellate court, on appeal, believed that the evidence established the lesser offense but not the greater. (*People* v. *Kelley* (1929) 208 Cal. 387, 391-392 [281 P. 609].)

By case law it is established that the standard of review by a trial court acting under this section is different from the standard used by an appellate court under the same section. In ruling upon a motion for a new trial, the trial court is required to independently weigh the evidence, but an appellate court will not modify or set aside the verdict if there is any substantial evidence to support it. (See *People* v. *Borchers* (1958) 50 Cal.2d 321, 328-330 [325 P.2d 97]; *People* v. *Sheran* (1957) 49 Cal.2d 101, 109 [315 P.2d 5].)

The distinction is not a difference in power, but in the circumstances under which it will be exercised. Thus in *People* v. *Thomas* (1945) 25 Cal.2d 880, at pages 904-905 [156 P.2d 7], this court said of the effect of subdivision 6: "While the *power* granted to the appellate court is equal to that given the trial court the circumstances which will justify its exercise in a particular court are those which are appropriate to typical functioning of that court." (Italics in the original.)

Though the trial court, by reason of its greater familiarity with the trial proceedings, may grant a new trial under circumstances under which an appellate court would refuse to act, each court is exercising a reviewing function when it exercises its power under subdivision 6. The consequences of a ruling made under the authority of this section must necessarily be limited to those contemplated by the statute.

If the trial court, after hearing the motion under section 1181, grants a new trial upon the ground that the verdict is contrary to the evidence, the decision is not an acquittal and is not a bar to a retrial for the offense of which the defendant had been convicted. This is so even though the decision may imply that the trial court has reweighed the evidence and has found that it does not establish the defendant's guilt of any offense.

If in lieu of granting a new trial the court decides to modify the verdict to a lesser included offense, and this modified verdict ultimately ripens into a final judgment of conviction, the conviction bars further prosecution of either the offense charged or the lesser offense. This follows because of the rule that a conviction of a lesser offense is a bar to prosecution of an-

other offense of which the lesser is a part. (See *People* v. *Greer* (1947) 30 Cal.2d 589, 597 [184 P.2d 512].)

Whether the order modifying the verdict, under section 1181, subdivision 6, can properly be characterized as an implied acquittal of the greater offense is open to question, but need not be decided here.[7] An order of a reviewing court purporting to modify a verdict to a conviction of an uncharged offense is an entirely different thing.

When the trial court, ruling on a motion made under subdivision 6, modifies the verdict to guilty of an uncharged offense, there may be an implied finding that the court has found that the evidence does not support the conviction of the offense charged. Such a finding by a court calls for an order granting a new trial, not an acquittal. The function of a trial court acting under section 1181 is in this respect distinct from the function of the trier of the facts in the main trial.

Where a jury returns a verdict of guilty of an uncharged offense, it is presumed that the jury concluded that the defendant was not guilty of the charged offense before it turned to a consideration of the lesser uncharged offense. This is the rationale of *In re Hess, supra,* 45 Cal.2d at page 176. The function of a jury, when it finds the evidence insufficient, is to acquit. By contrast, the function of the court, ruling on a motion for new trial is to grant a new trial if it finds the evidence insufficient. A court reviewing the verdict under section 1181 has no authority to acquit the defendant expressly, impliedly or inadvertently.

Defendants' argument that the court's ruling implies acquittal is not only contrary to law, but in the context of this record, it is also illogical.

When a trial judge reduces a conviction to a lesser offense shown by the evidence, it is reasonably inferable that the judge had the belief that the evidence proved the lesser offense and not the greater. But logic does not reveal any fact-finding which would support a modification to an offense neither charged nor proved. What appears is that the trial court desired to exercise an unauthorized leniency. The fact that the court imposed probation and a fine implies the court found that the defendants

---

[7] Penal Code section 1238, subdivision (6), expressly authorizes the People to appeal from an order modifying the verdict. In *People* v. *Sheran* (1957) *supra,* 49 Cal.2d 101, and *People* v. *Borchers* (1958) *supra,* 50 Cal.2d 321, this court heard and decided appeals by the People from orders modifying jury verdicts to lesser offenses. In each case the order was affirmed, and no question was raised as to the propriety of the appeals. It has long been established that the California Constitution's guarantee against double jeopardy prohibits appellate relief to the People after an acquittal. (*People* v. *Hill* (1905) 146 Cal. 145 [79 P. 845].)

were guilty of some offense. But if they are not being punished for the offense found by the jury, we have no clue to any other basis of punishment.[8]

Had the court attempted to do directly what it did indirectly, that is, impose a sentence not authorized by law for the offense of which the defendants were convicted, the law is well settled that such a sentence would have been subject to judicial correction whenever the error came to the attention of the trial court or a reviewing court. (See *In re Sandel* (1966) 64 Cal.2d 412 [50 Cal.Rptr. 462, 412 P.2d 806]; *People* v. *Massengale* (1970) 10 Cal.App.3d 689, 692 [89 Cal.Rptr. 237]; *People* v. *Orrante* (1962) 201 Cal.App.2d 553, 557 [20 Cal.Rptr. 480]; *In re Robinson* (1956) 142 Cal.App.2d 484 [298 P.2d 656].)

At oral argument defendants cited cases which have discussed the res judicata effect of an order of dismissal by a trial court.[9] But the court's power to dismiss a case, either under Penal Code section 1385 or under its inherent power, is another distinct function, the nature and scope of which need not be discussed here, since the trial court did not purport to dismiss the action or any part of it.

### III

Defendants' alternate contention is that if they have not been acquitted, they are at least protected against more severe punishment under the rule established in *People* v. *Henderson* (1963) 60 Cal.2d 482 [35 Cal.Rptr. 77, 386 P.2d 677], and followed in *People* v. *Ali* (1967) 66 Cal.2d 277 [57 Cal.Rptr. 348, 424 P.2d 932]; *People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370]; and *In re Ferguson* (1965) 233 Cal. App.2d 79 [43 Cal.Rptr. 325].

In *Henderson,* defendant was convicted of first degree murder and sentenced to life imprisonment. Following reversal of that conviction, he was again tried and convicted, and the jury fixed the penalty at death. This

---

[8]Defendants point to a statement made by the court, addressing the defendants, at the time of judgment: "There are unanswered questions in this particular matter, and please don't think that I don't realize that the two of you have been set up, apparently, by other persons who have been associated with you and may have invidious motives about destroying your capabilities and what you are doing in the community."

This statement is subject to several interpretations, not all of which are consistent with innocence. It may explain the court's desire to be lenient, but does not help us to understand what the court believed as to the issue of guilt.

[9]*People* v. *Superior Court* (1968) 69 Cal.2d 491 [72 Cal.Rptr. 330, 446 P.2d 138]; *People* v. *Superior Court* (1971) 19 Cal.App.3d 522 [97 Cal.Rptr. 118]; *In re Krieger* (1969) 272 Cal.App.2d 886 [77 Cal.Rptr. 822].

court held that the California Constitution's guarantee against double jeopardy (art. I, § 13) precluded the imposition of a more severe sentence upon retrial.[10]

In the *Henderson* case, as in each of the cited cases which followed it, the sentence imposed after the first trial was a lawful one, within the limits of the discretion conferred by statute for the offense of which the defendant had been convicted. The judgments pronounced at the first trials were reversed because of errors having nothing to do with the sentences.

■ The rule is otherwise when a trial court pronounces an unauthorized sentence. Such a sentence is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement.[11] A few examples will illustrate the principle.

*In re Sandel, supra,* 64 Cal.2d 412, grew out of a petition by a prisoner who attacked his confinement on several grounds, one of them being that the Adult Authority was treating his sentence for escape as consecutive to an earlier sentence, rather than concurrent, as the trial court had pronounced it. This court held that the trial court had no power to make the sentences concurrent in view of the statute which required a consecutive sentence, that the Adult Authority had no jurisdiction to correct the mistake of the trial court, that the sentence must be corrected judicially, and that this court had jurisdiction to do so. This court then held that the sentence for escape be deemed consecutive.

In *People* v. *Orrante, supra,* 201 Cal.App.2d 553, the trial court placed defendant on probation following a conviction for murder. On an appeal by the People taken under Penal Code section 1238, subdivision (6), the Court of Appeal held that the trial court exceeded its jurisdiction in granting probation, and the case was remanded with instructions to impose the sentence prescribed by law.

---

[10]No federal constitutional issue is involved here. At the time *Henderson* was decided, the federal guarantee against double jeopardy did not apply to the states. (See *Palko* v. *Connecticut* (1937) 302 U.S. 319 [82 L.Ed. 288, 58 S.Ct. 149], overruled by *Benton* v. *Maryland* (1969) 395 U.S. 784, 793 [23 L.Ed.2d 707, 715, 89 S.Ct. 2056].) Although the federal prohibition against double jeopardy now applies to the states, it does not prohibit in all cases the imposition of a more severe penalty after retrial. (See *North Carolina* v. *Pearce* (1969) 395 U.S. 711, 719 [23 L.Ed.2d 656, 666, 89 S.Ct. 2072].)

[11]The defendant is, of course, entitled to credit on his new sentence for time served under the one which was invalid. (Pen. Code, § 2900.1; *North Carolina* v. *Pearce, supra,* 395 U.S. 711, 718 [23 L.Ed.2d 656, 665].)

In *People* v. *Massengale, supra,* 10 Cal.App.3d 689, the trial court sentenced the defendants to the county jail for the offense of extortion, for which the statute prescribes a prison sentence. When defendants appealed from the judgment, the appellate court noticed the unauthorized sentence and remanded the cases to the superior court for imposition of lawful sentences.

An analogous situation is found in the cases where a conviction based upon a negotiated guilty plea is set aside because of the trial court's failure to obtain constitutionally required waivers. *In re Sutherland* (1972) 6 Cal.3d 666 [100 Cal.Rptr. 129, 493 P.2d 857] arose out of a petition for habeas corpus by a prisoner who had pleaded guilty to one of five counts. This court upheld the petitioner's contention that his conviction was invalid, and ordered it set aside. The opinion stated at pages 671-672: "At the time defendant pleaded guilty to one count, the prosecutor moved to dismiss the four remaining counts and his motion was granted. Since by granting relief we are in effect permitting defendant to withdraw his guilty plea, the ends of justice require that the *status quo ante* be restored by reviving the four dismissed counts. We therefore order all five counts restored to the superior court calendar (see *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1143 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]), to be either tried or disposed of in some other appropriate manner."

The same kind of disposition was made when a defendant successfully attacked his guilty plea by direct appeal in *People* v. *Kirkpatrick* (1972) 7 Cal.3d 480, 487 [102 Cal.Rptr. 744, 498 P.2d 992].

These cases are further illustration that a defendant who successfully attacks a judgment which is in excess of the court's jurisdiction is not necessarily entitled to claim the protection of that invalid judgment as an absolute limitation upon what the court may do thereafter.

In the case at bench, the order made by the trial court in ruling on the motion for a new trial, and all proceedings thereafter, were in excess of the court's jurisdiction, and must be set aside. If there were no other errors in the record it would be necessary to remand the case to the superior court for a new hearing on the defendants' motion for a new trial. (See *People* v. *Wilson, supra,* 271 Cal.App.2d 60, 65.)

It is unnecessary to do so in this case because another error in the record compels this court to grant a new trial.

## IV

After the attorneys had argued the case to the jury, the court commenced its instruction with some informal comments concerning the func-

tion of the jury in relation to society as a whole, and in relation to the evidence in this case. In the course of those remarks this appears: "So in exploring the case, what you have to decide is, I suppose, fundamentally, whether there is enough of an explanation given by the defense case with reference to these particular contraband items. Is it enough for you, as citizens, to feel satisfied?

"If you reach the affirmative view, of course you have got to acquit the defendants. If you think the explanation given isn't sufficient, you perhaps may reach a contrary conclusion.

"This is not an easy determination which you are approaching, but no decision worthy of the name is very likely to be an easy one. It's your society. You will, of course, be interested in conducting it as you choose.

"Do you have some statement to make, Mr. Porter?

"MR. PORTER [attorney for defendants]: Yes, your Honor. I think that the last statement of the Court is contrary to the basic principle of law, that it is up to the prosecution to prove their case, not up to the defendant to prove his case.

"THE COURT: Thank you, Mr. Porter. You may be seated."

The court then went ahead with more comment on other subjects.

 The thrust of the court's statement was to reverse the burden of proof on the only contested factual issue in the case. The defendants had not attempted to explain the contraband which was found in their car. Their defense was to attempt to cast doubt upon the People's circumstantial case by showing that other persons had been in the vicinity, and that defendants were good, law-abiding, peace-loving members of the community who would be unlikely to have committed the offense. The impact of the court's comment was augmented by its refusal to make a correction when defendants' attorney called attention to the error.

It is true that the court also told the jury that its comments were "advisory only," and the court did, later, give the customary instruction that a defendant is presumed innocent, and that the state has the burden of proving guilt beyond a reasonable doubt. The jury was also told that the failure of a defendant to testify should not enter into the deliberations in any way.

The due process clause of the Fourteenth Amendment to the federal Constitution protects the accused against conviction except upon proof beyond

a reasonable doubt. (*In re Winship* (1970) 397 U.S. 358, 361-364 [25 L.Ed.2d 368, 373-375, 90 S.Ct. 1068].) An erroneous instruction to the jury which in effect reverses this burden of proof is therefore an infringement of the defendant's constitutional right to due process (*Smith* v. *Smith* (5th Cir. 1971) 454 F.2d 572, 578.) Such an error is not necessarily cured by instructions which state the rules correctly. (See *People* v. *Hardy* (1948) 33 Cal.2d 52, 66 [198 P.2d 865]; *Smith* v. *Smith, supra.*)

An error which infringes a federal constitutional right compels reversal unless the reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].) There is no way to assess the impact of the trial court's unfortunate comment except to note that in the context of that trial a juror could have construed it as a direction to convict. Notwithstanding the formal instructions on burden of proof, that misstatement made by the trial court and its refusal to make a correction may not be declared harmless under the *Chapman* standard.

The judgment is reversed.

Wright, C. J., McComb, J., Burke, J., and Sullivan, J., concurred.

**MOSK, J.**—I concur with points I and IV of the majority opinion but dissent from points II and III.

However beguiling the rationale of the majority opinion, its melancholy result is to penalize these defendants for a successful appeal. Had defendants graciously accepted the trial court's erroneous judgment of guilt of violating Penal Code section 415, or had they appealed and *lost,* they would have remained simple misdemeanants, enjoying probation upon payment of a modest fine. Because they appealed and *won* they will be shocked to learn that through legal legerdemain they must stand trial a second time on serious felony charges and may ultimately be sentenced to state prison. Theirs is indeed a Cadmean victory.

In *People* v. *Henderson* (1963) 60 Cal.2d 482, 497 [35 Cal.Rptr. 77, 386 P.2d 677], Chief Justice Traynor articulated the principle which should guide us here: "A defendant's right of appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life [or his liberty] to invoke that right. Since the state has no interest in preserving erroneous judgments, it has no interest in foreclosing appeals therefrom by imposing unreasonable conditions on the right to appeal." (Accord, *People* v. *Hood* (1969) 1 Cal.3d 444, 459 [82 Cal.Rptr. 618, 462 P.2d

370]; *People* v. *Ali* (1967) 66 Cal.2d 277, 281 [57 Cal.Rptr. 348, 424 P.2d 932]; *People* v. *Chavez* (1970) 4 Cal.App.3d 832, 839 [84 Cal. Rptr. 783].) No distinction may be drawn, in denying exaction of a price for a successful appeal, between reversals on constitutional and nonconstitutional grounds. A defendant's exercise of a right of appeal in all cases must be free and unfettered; "vindictiveness" against a defendant for having successfully attacked his first conviction is impermissible. (*North Carolina* v. *Pearce* (1969) 395 U.S. 711, 724-725 [23 L.Ed.2d 656, 668-669, 89 S.Ct. 2072].)

The majority opinion purports to devise some neat procedural distinctions, but in effect it conflicts with substantive principles settled in the leading cases in this field, particularly *Gomez* v. *Superior Court* (1958) 50 Cal.2d 640 [328 P.2d 976], *In re Hess* (1955) 45 Cal.2d 171 [288 P.2d 5], and *Green* v. *United States* (1957) 355 U.S. 184 [2 L.Ed.2d 199, 78 S.Ct. 221, 61 A.L.R.2d 1119]. To permit a second felony trial to be conducted in the present circumstances violates the prohibition against double jeopardy. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 13.)

The first principle invoked by the majority under section II of the opinion (*ante,* pp. 759-760) is well accepted: that a defendant who succeeds in having his conviction set aside impliedly waives any objection to being retired on the same charge of which he was convicted. (*Forman* v. *United States* (1960) 361 U.S. 416, 425 [4 L.Ed.2d 412, 419, 80 S.Ct. 481].) The key phrase, which the majority overlook, is that the waiver applies to *the same charge of which he was convicted*. The charge, and the only charge, of which these defendants stand convicted today, and which they have now succeeded in having set aside, is violation of Penal Code section 415, a misdemeanor. Any implied waiver of objection to retrial therefore applies only to Penal Code section 415.

The waiver issue was considered in *Green* v. *United States* (1957) *supra,* 355 U.S. 184, 191-192 [2 L.Ed.2d 199, 206-207], and disposed of in this manner for the court by Justice Black: "Nevertheless the Government contends that Green 'waived' his constitutional defense of former jeopardy to a second prosecution on the first degree murder charge by making a *successful* appeal of his improper conviction of second degree murder. We cannot accept this paradoxical contention. 'Waiver' is a vague term used for a great variety of purposes, good and bad, in the law. In any normal sense, however, it connotes some kind of voluntary knowing relinquishment of a right. Cf. *Johnson* v. *Zerbst,* 304 U.S. 458. When a man has been convicted of second degree murder and given a long term of imprisonment it is wholly fictional to say that he 'chooses' to forego his constitu-

tional defense of former jeopardy on a charge of murder in the first degree in order to secure a reversal of an erroneous conviction of the lesser offense. In short, he has no meaningful choice. And as Mr. Justice Holmes observed, with regard to this same matter in *Kepner* v. *United States,* 195 U.S. 100, at 135: 'Usually no such waiver is expressed or thought of. Moreover, it cannot be imagined that the law would deny to a prisoner the correction of a fatal error, unless he should waive other rights so important as to be saved by an express clause in the Constitution of the United States.' "

Next, the majority recite, but in fact discard, a second fundamental principle: that where a trier of fact, jury or court, finds a defendant guilty of a lesser offense, there is an implied acquittal of the greater offense; and after such acquittal the double jeopardy prohibition of both the federal and state Constitutions bars retrial on the greater offense. But the majority, as I understand their opinion, reject that doctrine here by honing a razor-sharp distinction between a lesser but nonincluded offense, which will permit retrial on the greater charge, and a lesser included offense, which acts as a bar to that retrial. I can find no authoritative support for such an esoteric concept which, in the final analysis, would penalize the defendant for the judge's error.

In seeking to distinguish the treatment of lesser but nonincluded offenses, the majority repeatedly assert *(ante,* p. 762) that in ruling on a motion for new trial the function of the trial court "is to grant a new trial if it finds the evidence insufficient," and the court "has no authority to acquit the defendant expressly, impliedly or inadvertently." Obviously, however, the court does have the authority to acquit the defendant "impliedly"—the majority so recognize earlier in the opinion *(ante,* p. 761), where they concede that "If in lieu of granting a new trial the court decides to modify the verdict to a lesser included offense, and this modified verdict ultimately ripens into a final judgment of conviction, the conviction bars further prosecution of either the offense charged or the lesser offense. This follows because of the rule that a conviction of a lesser offense is a bar to prosecution of another offense of which the lesser is a part." The majority imply that this rule is applicable only to cases in which the trial court reduces the conviction to a lesser included offense. No reason is given, other than the majority's ipse dixit, to explain why it would not be equally applicable when the court reduces the conviction to a lesser but nonincluded offense.

Perhaps in an attempt to provide such a reason, the majority state *(ante,* p. 762) that "When a trial judge reduces a conviction to a lesser included offense, it is reasonably inferable that the judge had a belief that the evi-

dence proved the lesser offense and not the greater." Why is this not equally "reasonably inferable" when the judge reduces the conviction to a lesser but nonincluded offense? The majority then imply that in the latter case the trial court desired to exercise "leniency." Why, in turn, could this not be also true in cases in which the court reduces the conviction to a lesser included offense? In short, it is not the defendants but the majority who are being "illogical" in this case.

Unfortunately this result appears to be a retrogression to pre-1958 days when a comparable unnatural categorization was accepted. Prior to the decision in *Gomez* v. *Superior Court* (1958) *supra,* 50 Cal.2d 640, there was an anomalous distinction between a conviction of a lesser included offense and a conviction of a lesser degree of a crime which is divided into degrees. A conviction of a lesser included offense was deemed an acquittal of the greater offense (*In re Hess* (1955) *supra,* 45 Cal.2d 171, 176) but a conviction of a lesser degree would, after reversal, allow subsequent conviction of the greater degree of the same crime (*People* v. *Keefer* (1884) 65 Cal. 232, 235 [3 P. 818]). In *Gomez* this court found the distinction to be logically indefensible and held that the double jeopardy clause precluded convicting a defendant of a higher degree of a crime after reversal of a lower-degree conviction.

The fact-finding process involved here is relatively simple. It was described long ago in *People* v. *Gilmore* (1854) 4 Cal. 376, 377: " 'The jury, in such a case, in contemplation of law, render two verdicts; the one acquitting him of the higher crime; the other convicting him of the inferior. They must first determine his guilt or innocence upon the charge made by the indictment, before proceeding to inquire whether he is guilty of an inferior crime.' " (See also *People* v. *Gordon* (1893) 99 Cal. 227, 230 [33 P. 901].) An acquittal is equally valid whether express or implied. (*Price* v. *Georgia* (1970) 398 U.S. 323, 329 [26 L.Ed.2d 300, 305, 90 S.Ct. 1757].) And it is clear that the *Gilmore* process applies to motions for new trial considered by the court. (*In re Ferguson* (1965) 233 Cal. App.2d 79, 82 [43 Cal.Rptr. 325].)

Thus before the trial court, acting as the fact-finder here, could consider defendants' guilt of an inferior crime—whether a properly included or an inappropriate lesser offense—it necessarily *first* determined the defendant's innocence or guilt of the charge contained in the pleading. Only by an implied finding of not guilty of that charge could the judge reach the second plateau, i.e., a determination of the inferior charge of which he believed the defendants guilty. His subsequent error in stage two cannot in any way

affect his prior necessarily implied, and legally controlling, findings and conclusion on the initial charge.

No matter how the matter is analyzed or rationalized, and regardless of whether the trial judge scrupulously weighed the evidence or acted out of compassion, it is apparent to me beyond the slightest doubt that the judge intended to—and did—find the defendants not guilty of a felony, and guilty of a misdemeanor. That he chose the wrong misdemeanor in no way alters the validity and finality of the underlying acquittal of the felony charge. Failure to understand this point is the primary cause of the majority's error.

I find it impossible to read Penal Code section 1181, subdivision 6, as do the majority, to conclude that modifying the judgment is not an acquittal of the greater offense. The code language is unequivocal on that subject: "if the evidence shows the defendant to be *not guilty* of the degree of the crime of which he was convicted . . . the court may modify the verdict, . . ." (Italics added.) Once again, the process is elementary: the court must first determine the defendants not guilty of the charge of which the jury convicted them, and then it proceeds to modify by finding guilt of a lesser offense. Error in the latter step cannot affect the prior not guilty determination. As stated in *People* v. *Baca* (1966) 247 Cal.App.2d 487, 497 [55 Cal.Rptr. 681]: "subdivision 6 of section 1181 . . . applies only where the evidence shows defendant to be *not guilty* of the offense of which he was found guilty." (Italics added.)

The majority, through "a tangled variety of legal fictions" (Van Alstyne, *In Gideon's Wake* (1965) 74 Yale L.J. 606, 626), blithely sidestep the impact of Justice Traynor's impeccably reasoned opinion in *In re Hess* (1955) *supra,* 45 Cal.2d 171. There the defendant was charged with the felony of forcible rape; he was found guilty of contributing to the delinquency of a minor, a misdemeanor. After analysis of the nature of the crimes, this court held contributing was not a necessarily included offense, and "that the court therefore acted in excess of its jurisdiction in entering a judgment of conviction of that offense against him." (*Id.* at p. 175.)

Here the majority make the identical determination: since Penal Code section 415 is not a necessarily included offense within section 452, subdivision (b), the court acted in excess of its jurisdiction (*ante,* p. 765). Nevertheless, the majority detour around the uncomplicated manner in which *Hess* disposed of the problem: the rule is that a finding of guilt of a lesser offense implies a finding of innocence of the greater offense, "and that any error affecting the express verdict of guilty does not affect the

conclusiveness of the implied verdict of acquittal." The trier of fact must be presumed to have rejected guilt of the greater offense before considering conviction of what it erroneously believed to be a lesser included offense. (45 Cal.2d at p. 176.)

The United States Supreme Court has made it abundantly clear that the Fifth Amendment prohibition is not against being twice punished but against being twice put in jeopardy. (*United States* v. *Ball* (1896) 163 U.S. 662, 669 [41 L.Ed. 300, 302, 16 S.Ct. 1192].) Since the trial court found these defendants guilty of a misdemeanor, rather than the felony for which they were originally tried, upon reversal they may not be put in jeopardy a second time on a felony charge. The misdemeanor operates "as a ceiling whether or not the original error affected the fundamental fairness of the trial" (Van Alstyne, *op. cit. supra,* 74 Yale L.J. at p. 636). "Such a result flows inescapably from the Constitution's emphasis on a risk of conviction, and the Constitution's explication in prior decisions . . . ." (*Price* v. *Georgia* (1970) *supra,* 398 U.S. 323, 327 [26 L.Ed.2d 300, 304].)

Tobriner, J., concurred.

Appellants' petition for a rehearing was denied August 29, 1973. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.