Filed 4/4/16  P. v. Gallagher CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRETT GALLAGHER,<br><br>    Defendant and Appellant. | F070350<br><br>(Super. Ct. No. 11CM0094)<br><br>**OPINION** |

THE COURT\*

APPEAL from a judgment of the Superior Court of Kings County.  Steven D. Barnes, Judge.

John Hardesty, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Kane, Acting P.J., Poochigian, J. and Franson, J.

Defendant Brett Gallagher was convicted by jury trial of kidnapping, second degree robbery, and assault by means likely to produce great bodily injury. The jury found gang allegations true pursuant to Penal Code section 186.22, subdivision (b),[1] but the trial court stayed imposition of the two gang enhancements connected to the robbery and assault counts. The court sentenced defendant to an aggregate term of 23 years in prison. Because the trial court's failure to either impose or strike the gang enhancements resulted in an unauthorized sentence, we remanded for the trial court to exercise its discretion to do so. (*People v. Gallagher* (Jan. 17, 2014, F064407) [nonpub. opn.].)

On remand, the trial court imposed the two gang enhancements it had previously stayed, and sentenced defendant to a longer sentence of 29 years eight months.

On appeal, defendant contends the trial court abused its discretion by resentencing him to a greater sentence on remand. We affirm.

## FACTS

The following factual and procedural summary is taken from our previous nonpublished opinion in this case.

> "On January 17, 2011, Steven Galante was living in Visalia and working at the Best Buy Market in Hanford. Galante and a coworker, Christina Gallagher, made plans to get together after work. Christina and a friend, Rosie, picked up Galante when he got off work; Christina brought with her a large quantity of beer. The three drove to Rosie's house in Hanford. After they arrived, there were a total of three women and eight men at the house, including Davis, Maxwell, and [defendant].

> "During the course of the evening, Galante spoke with everyone at the house. People were hanging out and drinking. Galante had two or three beers and a shot of whisky during the evening.

> "About 90 minutes after arriving at the party, Galante, Christina, Maxwell, and another girl, Jewels, drove to a nearby store. As they were

---

[1] All statutory references are to the Penal Code.

leaving the store, Serna was standing outside. Christina introduced Serna and Galante; Serna got into the car with the group.

"After returning to the party, while in a conversation with Maxwell, Galante informed Maxwell that he had been to prison for possession for sale of drugs and that he was a Northerner or Norteno. Galante had dropped out of the gang while in prison but did not admit this to Maxwell. Maxwell told Galante he was a Crip. Galante was not concerned because Northerners and Crips usually got along in prison.

"Sometime later, Christina again was leaving the party with Rosie and Jewels to go to the store; she wanted Galante to go with them. Galante indicated he would stay behind; Christina was concerned for his safety because Serna was at the house. Christina did not trust Serna based on previous contact with him.

"Shortly after leaving the house, Christina called Galante on his cell phone and stated Rosie had been arrested for driving under the influence of alcohol and she (Christina) needed a ride. Galante told [defendant] Christina needed a ride. [Defendant] had been in a room with Maxwell, Davis, Serna, and an individual by the name of Chase discussing rescheduling a Crips meeting.

"Galante thought he and [defendant] were going to pick up Christina, but when they walked out of the house, Serna, Maxwell, Davis, and Chase came along. Maxwell asked where Galante was from; Galante responded 'Tulare County.' Someone hit Galante on the back of the head and he fell to the ground. Maxwell, Serna, Davis, [defendant], and Chase then repeatedly kicked and hit Galante while yelling 'Home Garden Crip.' Galante also heard someone say, 'this is a Crip thing.'

"The five men beating Galante threatened to kill him if he made any noise. They took Christina's car keys from Galante, walked him to the car, and pushed him into the trunk. At some point during the attack, Galante's cell phone and wallet were taken. They then closed the trunk and drove away with Galante in the trunk; Galante lost consciousness at some point.

"After a while the car stopped. The trunk was opened and Galante was warned to be quiet or he would be killed. Two of the men pulled Galante out of the trunk; Galante fell to the ground. They again beat Galante, hitting him 'a dozen, two dozen times.' Galante saw each of the appellants hitting him when he looked up a couple of times during the assault. [Defendant] was right in front of Galante. They leaned over

3.

Galante as they hit and kicked him. After the assault, Galante eventually was able to stumble to a house and ask for help.

"Kings County Sheriff's Deputy Nathan Ferrier interviewed Galante at the hospital emergency room. Galante indicated all five of the males at the house attacked him after Christina left. The interview was short because Galante passed out. Galante had a gash under his eye that required multiple stitches. He had multiple abrasions and bruising to his back and shoulders.

"Detective David Dodd drove to the location where Galante had been left by the roadside. Dodd saw two puddles of blood on the road that were consistent with Galante being beaten at that location. A short distance from the puddles of blood were the words 'gangsta Crip.' A house nearby had gang writing on it.

"Dodd again interviewed Galante the next day after his release from the hospital. Galante had interacted mostly with Maxwell at the party and easily was able to identify Maxwell as one of his attackers. Galante also identified [defendant], Davis, Serna, and Chase from photo lineups.

"On October 4, 2011, an information was filed charging Davis, Serna, Maxwell, and [defendant] with kidnapping, second degree robbery, and assault by means likely to produce great bodily injury. As to all three counts, it was alleged all four personally inflicted great bodily injury and committed the offenses for the benefit of a criminal street gang. It also was alleged Maxwell had suffered a prior serious felony conviction and Serna had served a prior prison term.

"The parties stipulated that Kings County Sheriff's Deputy Andrew Meyer was an expert in Kings County street gangs. Meyer explained that the Northerners, or Nortenos, and the Crips were rival gangs in Kings County. Crips would try to assault a Norteno who came into their territory and it would be common for the gang members to call out the name of the gang during an assault. Meyer opined that Davis, Serna, Maxwell, and [defendant] were members of the Crips gang.

"The jury found all four appellants guilty as charged and found all enhancements true. The trial court imposed an aggregate term of imprisonment of 18 years for Davis and remanded him to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF). An aggregate term of 33 years was imposed on Maxwell, 23 years on Serna, and 23 years on [defendant], each of whom was sentenced to state prison.

4.

"On May 17, 2012, this court ordered the appeals filed by [defendant], Maxwell, and Serna consolidated. By order dated February 5, 2013, the appeal filed by Davis was consolidated with the appeals filed by the other three appellants." (*People v. Gallagher*, *supra*, F064407, fn. omitted.)

## DISCUSSION

### I. *Background*

The probation officer's new report, prepared for the resentencing hearing on remand stated the following:

"In reviewing the parent sentencing report, the Probation Department was in error by staying the allegations pursuant to Section 186.22[, subdivision ](b)(1)(C) of the Penal Code in Counts II and III in that multiple enhancements pursuant to Section 186.22[, subdivision ](b)(1) of the Penal Code may be imposed when found true on multiple crimes. When a defendant is convicted of multiple felony crimes, each with a true finding of an allegation pursuant to Section 186.22[, subdivision ](b)(1) of the Penal Code, the Court may impose additional prison time for the gang allegation on each felony count for which the allegation was found true. Pursuant to Section 1170.1[, subdivision ](a) of the Penal Code, the allegation for subordinate counts '*shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses.*'"

The report further informed the trial court that it had the discretion to strike the enhancements.

Finally, the report concluded as follows:

"In reviewing the parent sentencing report, the defendant and co-defendant[s'] actions were extremely egregious in nature. The victim was severely beaten by the defendant and three co-defendants and thrown in the trunk of a vehicle. The defendant and three co-defendants then drove to a location and dropped the victim off stating, '*I'm going to kill you.*' The defendant and co-defendant[]s again began beating the victim[,] at which time, they stole his wallet and cell phone. The defendant was able to escape the brutal attack, running to a residence and asking for help.

"The defendant's complete disregard for the victim's well being[,] as well as his extreme assaultive behavior and gang affiliation, demonstrates the defendant to be a real and significant danger to society. Therefore, the

Probation Department would recommend the allegations pursuant to Section 186.22[, subdivision ](b)(1)(C) of the Penal Code in Counts II and III be imposed pursuant to Section 1170.1[, subdivision ](a) of the Penal Code."

At the resentencing hearing, the following occurred:

"THE COURT:  All right, it's actually on for resentencing, just to make sure the record's clear, with respect to the gang enhancement that was in—the Court was unable—the Court is unable to stay the execution of the gang enhancement with respect to Counts 2 and 3, so it was sent back to this Court on a remittitur as to whether or not the Court should impose an additional three years four months on Counts 2 and 3 or, in essence, dismiss them or impose it and stay the—and strike the punishment.

"Based on the entire circumstances of the case, [defense counsel], and you—the supplemental report has a good [genesis] of the basis of the facts, and since you reviewed it for purposes of the new trial motion, I would assume you've had an opportunity to review what the facts were with respect to the underlying case?

"[DEFENSE COUNSEL]:  That's correct, your Honor.

"THE COURT:  All right.  And with respect to an indicated decision on this particular item, there—as you saw in the other sentencing, there were different intents with respect to each offense, Counts 1, 2, and 3, the Court's analysis was that they were not subject to [section] 654 of the Penal Code, that was upheld by the appellate court, which is, in essence, why— one of the reasons it's back here.

"This was clearly an assault for gang purposes during which a robbery from a person occurred, there was also a kidnaping, and the crime—as crimes is [*sic*] found by the Court as well was that they were not simultaneously committed and they were subject to consecutive terms.

"With respect to the seriousness of the underlying offenses that occurred, the manner in which they were incurred, as well as the gang statements or gang-related statements that were made as the offenses were occur[ing], with respect to an indicated decision the Court would intend in this case to impose an additional one-third of the ten year gang enhancement on Counts 2 and 3.  So it would be an additional three years four months on Counts 2 and 3, which are each one-third the midterm of the ten year enhancement.  That would increase the aggregate term to

6.

29 years eight months in this particular case. [¶] So with respect to the Court's indicated [sentence], do you wish to be heard, [defense counsel]?

"[DEFENSE COUNSEL]: Yes, your Honor. You know, bottom line I mean the appellate court made it clear that as you stated the gang enhancements could not be stayed, however, the Court does have the discretion to strike those, that enhancement.

"Although [defendant] did file an appeal in this matter, unlike his co-defendants …, he did not raise the issue with the Court about the stay of imposition of the gang enhancements being incorrect. Unfortunately, as he raised other issues on appeal he finds himself here in front of the Court for resentencing.

"You know, the Court had an opportunity to hear the trial testimony, the sentencing evidence and arguments and determined that what it felt to be the appropriate sentence under the circumstances. The Court felt at the time that staying imposition of the gang enhancements was the proper sentence at the time. The Court today has the ability to affirm that determination by simply striking the gang enhancement[;] … doing so would be the just thing to do in this case. I'd submit.

"THE COURT: [Prosecutor]?

"[PROSECUTOR]: People submit based on the Court's indicated [sentence].

"THE COURT: All right, for the reasons stated in my indicated sentence, first of all, I would note that the Court is aware that it does have the discretion to either dismiss the gang enhancements as they relate to Counts 2 and 3, or impose the sentence and strike the punishment, or just not impose the time. But, in any event, in the exercise of the Court's discretion, which the Court is exercising in this particular case, the Court would find based on the circumstances stated with respect to the indicated sentence, the Court will impose an additional and consecutive one-third the midterm of the ten year enhancement for the [section] 186.22[, subdivision (b)(1)(C)] enhancement which is three years four months on Count 2, and an additional and consecutive three years four months for the same enhancement as to Count 3. [¶] The aggregate term and commitment then will be increased to 29 years eight months.

"And that would conclude [defendant]'s proceedings for this morning, he's remanded back to the Department of Corrections to further execute the sentence previously imposed."

7.

## II. Analysis

An unauthorized sentence must be corrected whenever the mistake is discovered, whether or not the defendant has appealed. (*People v. Massengale* (1970) 10 Cal.App.3d 689, 693.) Furthermore, the new sentence on remand may be more severe than the original, unauthorized sentence. (*People v. Serrato* (1973) 9 Cal.3d 753, 764-765, disapproved on another ground in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1; *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 431-438, and cases cited therein.) Defendant acknowledges these principles, but contends the trial court abused its discretion on remand because the resentencing judge was the same judge who had presided over the trial. Defendant explains that because no new evidence or information was before the court, the court's refusal to strike the gang enhancements it had previously stayed was arbitrary.

We review the trial court's refusal to strike a gang enhancement under an abuse of discretion standard. (*People v. Sinclair* (2008) 166 Cal.App.4th 848, 855.) We must affirm a trial court's discretionary sentencing choice unless it is arbitrary, capricious, or irrational. (See *People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) Under this standard, we do not reweigh sentencing factors or substitute our evaluation for that of the sentencing court. (*Id.* at p. 377.) " ' "[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*Id.* at pp. 376-377.)

Here, we cannot say the trial court's decision to impose the gang enhancements was arbitrary, capricious, or irrational. The crimes defendant committed were brutal,

8.

baseless, and deserving of severe punishment.  The trial court did not abuse its discretion by imposing the gang enhancements.[2]

## DISPOSITION

The judgment is affirmed.

---

**2**      We note that the court's change of heart may have been due to a previous misadvisement of its discretionary powers by the probation department.  But even if it was not, the trial court was authorized to exercise its discretion to impose the enhancements following the imposition of an unauthorized sentence.