Filed 7/30/21  P. v. Velasquez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ERNESTO VELASQUEZ,<br><br>    Defendant and Appellant. | F080020<br><br>(Super. Ct. No. 18CMS5729)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

Dorothy A. Streutker, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Erin Doering, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Ernesto Velasquez was found guilty by jury trial of domestic violence, criminal threats, false imprisonment, and dissuading a witness. The trial court imposed consecutive sentences. On appeal, he contends the sentences for the criminal threats, false imprisonment, and dissuading a witness convictions should have been stayed pursuant to Penal Code section 654[1] because the facts underlying those convictions were part of an indivisible course of conduct with those of the domestic violence conviction. Additionally, defendant contends that the matter must be remanded to the trial court with instructions to strike the imposed "prior prison term enhancements" (capitalization omitted) in light of Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill No. 136).[2] We strike the enhancement imposed under section 667.5, subdivision (b), vacate the sentence, and remand the matter to the trial court for resentencing. In all other respects, we affirm the judgment.

## PROCEDURAL SUMMARY

On June 13, 2019, the Kings County District Attorney filed a first amended information charging defendant with domestic violence (§ 273.5, subd. (a); count 1), criminal threats (§ 422, subd. (a); count 2), kidnapping (§ 207, subd. (a); count 3), false imprisonment by violence (§ 237, subd. (a); count 4), and dissuading a witness by force or threat (§ 136.1, subd. (b)(1); count 5). The complaint further alleged defendant had suffered a prior strike conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), one prior serious felony conviction pursuant to

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The trial court imposed the same prior prison term enhancement on each consecutive count in the determinate sentence and both defendant and the People refer to the prior prison term in the plural. It was, however, one prior prison term enhancement and could only be imposed once on defendant's determinate sentence. A prior prison term sentence enhancement goes to the nature of the offender. As such, it has nothing to do with particular counts, but is added only once as a step in arriving at the aggregate sentence. (*People v. Williams* (2004) 34 Cal.4th 397, 402.)

2.

section 667, subdivision (a)(1), and one prior prison term pursuant to section 667.5, subdivision (b).

On June 13, 2019, a jury found defendant guilty of counts 1, 2, 4, and 5, and not guilty of count 3 as charged, but found him guilty of the lesser included offense of false imprisonment. Additionally, defendant admitted the prior strike and prior prison term.

On September 18, 2019, defendant was sentenced to an aggregate term of 11 years as follows: on count 1, the middle term of three years doubled to six years pursuant to the prior strike, plus one year for the prior prison term; on count 2, a consecutive eight months doubled to one year four months pursuant to the prior strike, plus one year stayed for the prior prison term; on count 3, eight months doubled to one year four months pursuant to the prior strike, plus one year for the prior prison term, both stayed pursuant to section 654; on count 4, a consecutive eight months doubled to one year four months pursuant to the prior strike, plus one year stayed for the prior prison term; and on count 5, a consecutive eight months doubled to one year four months, plus one year stayed for the prior prison term. Although the trial court denied defendant's motion to strike the strike allegation, it chose not to impose the serious felony conviction alleged pursuant to section 667, subdivision (a)(1) and admitted by defendant stating "defendant is already being punished sufficiently by doubling up the sentence that he would ordinarily receive had he not suffered the strike conviction."

On September 18, 2019, defendant filed a notice of appeal.

**FACTUAL SUMMARY**

J.M. and defendant were in a romantic relationship. On November 10, 2018, officer Joshua Dieterle of the Corcoran Police Department was walking to his patrol vehicle in front of the police station when J.M. approached him and said, "don't tell him I told you, but [defendant] fucked me up last night." J.M. was crying and appeared scared. She had slight swelling to her lip and complained of pain behind her ear and neck.

3.

J.M. told Dieterle that on November 9, 2018, at approximately 10:00 p.m., J.M. and defendant were arguing in front of a store when defendant struck her on the head with a closed fist. J.M. cried out for help, but defendant covered her mouth and told her not to say anything. Defendant then stuck a sharp object against her back, which she believed was a knife, and said, "Shut your fucking mouth or I will kill you, I don't give a fuck." He said he would stab her if "she didn't shut her mouth." Defendant than forced her to walk to his friend's house by grabbing her neck and pulling her. J.M. said she felt afraid. When they arrived at the friend's house, defendant made her go inside. Defendant acted aggressive, making her do things such as taking off his socks and shoes and rubbing his feet. He also slapped her multiple times. J.M. attempted to call the police, but defendant took her phone. She said defendant's mood fluctuated between calm and aggressive. J.M. asked to leave multiple times, but defendant would say "no" and would physically prevent her from leaving by grabbing her by the neck. At 5:00 a.m. the following day, J.M. told defendant to let her go because she was afraid her mother would report her missing to the police and he finally let her leave. He told her that if she reported the incident, he would kill her after being released from jail. J.M. reported the incident to Dieterle later that day.

## DISCUSSION

### I.  Section 654

Defendant contends the sentences for counts 2, 4, and 5 should be stayed pursuant to section 654 because the facts underlying those convictions were part of an indivisible course of conduct with those of count 1. We disagree.

### A.  Background

In closing argument, the prosecution stated which act it relied on for each charge.

> "[PROSECUTOR:] So we have Count 1, domestic violence, that's what it's commonly called. . . . And what we're looking at here was the hit that caused the lip injury. [¶] . . . [¶]

4.

". . . Count 2 will be criminal threats.  And for this one, there are two threats in particular that I want you to look at when you look a[]t Count 2.  One, 'shut your fucking mouth or I will kill you, I don't give a fuck.'  And, two, 'I will stab you if you don't shut up.' . . .   [¶] . . . [¶]

"Count 3, kidnapping.  Now this is the Point A to the Point B where she didn't want to go, and she tried to stray away and he pulled her in close, covered her mouth, and put that thing behind her back and said those words that he said. . . ."  [¶] . . . [¶]

"Now let's look at Count 4. . . .  This false imprisonment was when he forced her to stay at the house once they got to the house.  She stated to the officer she tried to call police and he took her phone, she asked to leave and he said no, she tried to leave a couple times and he pulled her back, that was one of the times that he busted her lip.  [¶] . . . [¶]

"Now Count 5, Count 5 is dissuading a witness, and what we're talking about here is the statement when—the next morning when she said my mom is going to report me missing if you don't let me go, and he let her go.  He let her go with one statement.  And he said 'if you report me, when I get out I will kill you.'  That's the statement we're looking at here."

At sentencing, the trial court determined that "all the charges involved separate instances of aberrant behavior and warrant[ed] consecutive sentences with the exception of Counts 2 and 3."  The trial court "stay[ed] the sentence in Count 3 as being [section] 654 to Count 2."

### B.    Applicable Law

Section 654, subdivision (a) provides:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

"Section 654 has long been interpreted to preclude multiple punishments not only for a single act that violates more than one statute, but for an indivisible course of conduct." (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1042.)  "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the

meaning of section 654 depends on the intent and objective of the actor." (*Id.* at pp. 1042-1043.) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Ibid.*)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) "Its findings will not be reversed on appeal if there is any substantial evidence to support them." (*Ibid.*) "We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*Ibid.*)

### C. Analysis

In this case, defendant argues that the domestic violence (count 1), criminal threats (count 2), false imprisonment (count 4), and dissuading a witness (count 5) convictions were part of an individual course of conduct to exert control over J.M. However, the courts have cautioned against viewing a defendant's intent and objective so broadly. (*People v. Perez* (1979) 23 Cal.3d 545, 552-553.) "To accept such a broad, overriding intent and objective to preclude punishment for otherwise clearly separate offenses would violate the statute's purpose to [ensure] that a defendant's punishment will be commensurate with his culpability." (*Id.* at p. 552.) "It would reward the defendant who has the greater criminal ambition with a lesser punishment." (*Ibid.*) For example, in *Perez* the court noted that "[a] defendant who attempts to achieve sexual gratification by committing a number of base criminal acts on his victim is substantially more culpable

6.

than a defendant who commits only one such act." (*Id.* at p. 553.) Accordingly, we decline to interpret defendant's intent so broadly.

Moreover, the evidence establishes that the criminal threats (count 2), false imprisonment (count 4), and dissuading of J.M. as a witness (count 5) were not incidental to, or were a means of accomplishing or facilitating domestic violence against J.M. (count 1). Rather, defendant harbored different criminal objectives. (*People v. Harrison*, *supra*, 48 Cal.3d at p. 335 [where a "defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' "].) With respect to count 2, the criminal threats charge, the objective was to stop J.M. from screaming for help by threatening to stab and kill her. With respect to count 4, the false imprisonment charge, defendant's objective was to prevent J.M. from leaving the friend's house. J.M. tried to leave, but he told her "no" and physically prevented her from doing so and took her phone away. With respect to count 5, the dissuading a witness charge, defendant's objective was to prevent J.M. from reporting him to the police. Defendant could have accomplished domestic violence, which was based on the injury to J.M.'s lip, without threatening to kill her if she did not "shut her mouth," forcing her to stay at the friend's house, or threatening to kill her if she reported the incident. Moreover, because the acts occurred over the course of a seven-hour period, defendant had the "opportunity to reflect and to renew his . . . intent before committing [each] one." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935; see *ibid*. ["offenses [that] are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one" may give rise to multiple punishment].) J.M. reported that defendant's mood fluctuated between calm and aggressive, evidencing that he had the opportunity to reflect and consider his acts.

7.

We conclude the trial court did not err when it imposed consecutive sentences on counts 2, 4, and 5.

## II. Senate Bill No. 136

Defendant further contends his prior prison term enhancement on count 1 must be stricken in light of Senate Bill No. 136. The People concede Senate Bill No. 136 applies retroactively to defendant's case, but argues that, because the court did not impose the upper term on count 1, and because the court struck the prior serious felony conviction "for sentencing purposes," the matter must be remanded for resentencing "in light of the entire sentencing scheme." Defendant also requests the matter be remanded for resentencing.

Senate Bill No. 136 amended section 667.5, subdivision (b) to limit prior prison term enhancements to only prior terms that were served for a sexually violent offense as defined by Welfare and Institutions Code section 6600, subdivision (b). (§ 667.5, subd. (b), as amended by Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.) Defendant's prior prison term was for discharge of a firearm in a grossly negligent manner with a gang enhancement, not for a sexually violent offense. Therefore, as the parties agree, defendant is entitled to the ameliorative benefit of Senate Bill No. 136's amendment to section 667.5, subdivision (b).

When an appellate court strikes a portion of a sentence, remand for " 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) On remand, the trial court is permitted to impose the same sentence it originally imposed if some other appropriate method of sentence calculation exists to reach the same result. (See *People v. Torres* (2008) 163 Cal.App.4th 1420, 1431-1433.) However, a trial court may not impose a higher sentence in that situation. (*Id.* at pp. 1432-1433; see *People v. Serrato* (1973) 9 Cal.3d 753, 764; *People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1310-1311.)

## DISPOSITION

The prior prison term enhancement imposed pursuant to section 667.5, subdivision (b) is stricken and the sentence is vacated. The matter is remanded to the trial court with directions to resentence defendant to a sentence not to exceed his original sentence. In all other respects, the judgment is affirmed.


DETJEN, J.

WE CONCUR:


HILL, P.J.


PEÑA, J.


9.