Filed 12/18/23 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TERRELL TRAMMEL,<br><br>    Defendant and Appellant. | A166756<br><br>(San Francisco City & County<br> Super Ct. Nos., SCN 232509,<br> CT20000300 & CT20004019)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN  JUDGMENT] |

BY THE COURT:

On its own motion, the court orders that the opinion filed on November 21, 2023, be modified as follows:

On the second line of page 5 (starting with "violated double jeopardy . . . ,"), the word "recognizes" should be deleted and replaced with "recognize."

On line 7 of page 26 (starting with "V vandalism charge . . ."), "count VIII" should be deleted and replated with "count XIII."

On line 9 of page 26 (starting with "grounds."), "(18 months)" should be deleted and replaced with "(16 months)."

There is no change in judgment.

Dated:

_____
Humes, P.J.

1

Filed 11/21/23 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>TERRELL TRAMMEL,<br><br>     Defendant and Appellant. | A166756<br><br>(San Francisco City & County<br> Super Ct. Nos., SCN 232509,<br>CT20000300 & CT20004019) |

In his first appeal in this matter, defendant Terrell Trammel challenged the trial court's sentencing order, which imposed an aggregate 12-year prison term for numerous convictions arising out of his violent relationship with his former girlfriend, M.T. We agreed with Trammel that the trial court erroneously failed to stay the punishment for two convictions pursuant to Penal Code[1] section 654 and remanded the matter for a full resentencing. (*People v. Trammel* (June 30, 2022, A161381) [nonpub. opn.].)[2]

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] Since the filing of our first opinion in this matter, it has come to our attention that there is a discrepancy with respect to the spelling of the defendant's last name. While the bulk of the documents refer to the defendant as "Trammel," including pleadings filed by his own attorneys, other documents (such as police reports and the second notice of appeal) reference him as "Trammell." For purposes of consistency with our prior

1

On remand, the trial court corrected its section 654 errors, resentencing Trammel to a total prison term of 12 years, four months. In this second appeal, Trammel argues that his new sentence runs afoul of the prohibition against double jeopardy set forth in Article I, section 13 of the California Constitution. We agree and will remand to correct this error as well as an error with respect to custody credits.

In remanding the case, however, we reject Trammel's request to have another full resentencing hearing before a different trial judge. As we discuss further below, the trial court here understood it was engaged in a full resentencing, thoughtfully considered the parties' arguments, and clearly articulated its reasons for imposing sentence as it did. Given these facts—along with the murkiness of the restrictions on resentencing that exist in this context—we see absolutely no showing of vindictiveness in the trial court's actions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts with respect to this criminal prosecution are detailed in our prior unpublished opinion in this matter, and we need not repeat them here at length. In August 2020, a jury found Trammel guilty of burglary (count I), making a criminal threat as to M.T. (count II), vandalism (count V), three counts of domestic violence (counts VII, IX, and XII), and kidnapping (count XI). The jury found Trammel not guilty of three charged assaults by force likely to cause great bodily injury (counts VIII, X, and XIII), but found him guilty of the lesser included offense of misdemeanor assault (§ 240) with respect to each charge. (*People v. Trammel, supra*, A161381.)

opinion, we will refer to the defendant herein as "Trammel," but clarify that we are referring to the individual identified by CII No. 11688126.

Trammel was sentenced to a total of 12 years in state prison in November 2020.  Specifically, the trial court ordered: the upper term of eight years for the principal count, kidnapping (count XI); a consecutive 16 months for burglary (count I), a consecutive eight months for making criminal threats (count II); and a consecutive two years for the June 2017 domestic violence conviction (count VII), one year for the conviction, itself, and an additional year on the attached arming enhancement.  The trial court imposed concurrent three-year terms for the remaining domestic violence convictions (counts IX and XII) and concurrent time-served sentences for the remaining misdemeanors (counts V, VIII, X, and XIII).  (*People v. Trammel*, *supra*, A161381.)

On appeal, we concluded that the trial court erred under section 654 by imposing separate punishment for both domestic violence under count VII and simple assault under count VIII, both of which related to the same June 2017 domestic violence incident.  We similarly found that section 654 precluded punishment for both domestic violence under count IX and simple assault under count X with respect to the domestic violence incident on October 18, 2019.  We remanded the matter for resentencing.  (*People v. Trammel*, *supra*, A161381.)

On November 23, 2022, the trial court conducted a full resentencing in accordance with our instructions, commenting that it was "of great consequence" that the new sentencing laws effective on January 1, 2022, were applicable to Trammel's case and discussing the relevant statutory changes.  The court reviewed the presentence report, a resentencing memorandum from the prosecutor and a resentencing memorandum from the defense, the latter of which included a social worker's mitigation assessment.

The defense requested a sentence of three years, eight months. The prosecutor urged the court to impose a sentence of 14 years.

The trial court resentenced Trammel to 12 years and four months in prison. Specifically, the court again ordered the upper term of eight years for the principal count, kidnapping (count XI); a consecutive 16 months for burglary (count I); and a consecutive two years for the June 2017 domestic violence conviction (count VII), one year for the conviction and an additional year on the attached arming enhancement. The court stayed the punishment for making criminal threats (count II (eight months)) and for the misdemeanors (counts V (1 year), VIII (180 days), X (180 days), and XIII (180 days) pursuant to section 654. Finally, rather than imposing concurrent three-year terms for the remaining domestic violence convictions (counts IX and XII), the trial court imposed a consecutive one-year term on count IX and a concurrent one-year term on count XII.

In reaching this sentence, the court indicated it had considered the mitigation report but determined that no evidence suggested childhood trauma was related to the commission of the crimes. It further found that imposition of the lower term would be contrary to the interests of justice, noting that Trammel showed no remorse for the crimes. The court additionally concluded that the middle term was not appropriate given Trammel's history of prior convictions (which the prosecutor established with certified records of conviction) in aggravation and no factors in mitigation. When defense counsel commented that the sentence was four months longer than the court had previously imposed, the court indicated its awareness of this fact.

Trammel again appealed.

## II. DISCUSSION

Trammel argues that imposition of a longer sentence on remand violated double jeopardy principles which recognizes that defendants should not be required to risk being given greater punishment for successfully exercising their appellate rights. The Attorney General disagrees, asserting that, since Trammel's original sentence was "unauthorized," there was no limitation on the trial court's power to impose a greater sentence on remand. Resolution of this dispute requires analysis of two intersecting lines of Supreme Court precedent. We thus begin by discussing each in turn.

### A. *Supreme Court Double Jeopardy Precedent*

In the seminal case of *People v. Henderson* (1963) 60 Cal.2d 482 (*Henderson*), the defendant was convicted of first degree murder and sentenced to life imprisonment. Following reversal of that conviction, he was again tried and convicted, and the jury fixed the penalty at death. (*Id.* at p. 484.) The defendant argued that the prohibition against double jeopardy precluded imposing the death sentence after reversal of the first judgment sentencing him to life imprisonment. (*Id.* at p. 495.) The Supreme Court agreed, holding that the California Constitution's guarantee against double jeopardy (art. I, § 13) prohibited the imposition of a more severe sentence upon retrial. (*Henderson*, at pp. 496–497.) The Court reasoned: "A defendant's right of appeal from an erroneous judgment is unreasonably impaired when he is required to risk his life to invoke that right. Since the state has no interest in preserving erroneous judgments, it has no interest in foreclosing appeals therefrom by imposing unreasonable conditions on the right to appeal." (*Id.* at p. 497.)

Shortly thereafter, the Supreme Court reaffirmed *Henderson*'s reasoning in *People v. Ali* (1967) 66 Cal.2d 277 (*Ali*). There, the defendant

5

had been sentenced to concurrent terms for three credit card offenses but was subsequently retried. (*Id.* at pp. 278, 281.) At his second sentencing, he was sentenced to consecutive terms for the same offenses that had previously been ordered to run concurrently. (*Id.* at pp. 281–282.) Applying *Henderson*, the Court opined: "Where a defendant has been sentenced to concurrent terms and then upon a retrial is sentenced to consecutive terms for the same offenses, his [or her] punishment has been increased by indirect means. The reasoning which prevents an increase by direct means would seem to be applicable in such a situation, as a defendant should not be required to risk being given greater punishment on a retrial for the privilege of exercising his [or her] right to appeal." (*Id.* at p. 281.)

In *People v. Collins* (1978) 21 Cal.3d 208 (*Collins*), the defendant was initially charged with numerous robbery and sexual offenses, but pleaded guilty to one count of oral copulation, after which the remaining counts and various enhancement allegations were dismissed. The court then suspended criminal proceedings, found the defendant to be a mentally disordered sex offender, and committed him to a state hospital for an indefinite period. (*Id.* at p. 211.) While the defendant was institutionalized, former section 288a (the oral copulation statute) was repealed and reenacted in a new section with the same number. Thereafter, it was determined that the defendant was no longer a danger to others, and criminal proceedings were reinstated. Rejecting the defendant's argument that it had no jurisdiction to sentence him because of the repeal of the underlying statute, the trial court sentenced the defendant to state prison for one to 15 years, with credit for the time he had served at the state hospital. (*Id.* at pp. 211–212.)

The Supreme Court reversed the conviction, concluding that the trial court erred in imposing sentence because the conduct which the defendant

6

admitted in pleading guilty was no longer punishable at the time of sentencing. (*Collins*, *supra*, 21 Cal.3d at p. 212.) It then considered the effect of its reversal on the dismissed counts. (*Id.* at p. 214.) Noting that "[c]ritical to plea bargaining is the concept of reciprocal benefits," the Court concluded that, in order for the prosecution to get the benefit of its bargain, the dismissed counts must be restored. However, since the defendant had not repudiated the plea bargain by attacking his guilty plea, he was also entitled to the benefit of his bargain. (*Id.* at pp. 214–216.) To craft an appropriate remedy, the Court turned to "a line of cases based on principles of double jeopardy" in which its concerns were "specifically to preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal." (*Ibid.*) Citing *Henderson* for the "long recognized" principal that "the state has no interest in preserving erroneous judgments," the Supreme Court concluded that the rights of the prosecution and the defendant could best be protected by permitting the state to revive one or more of the dismissed counts but limiting the defendant's potential sentence to not more than three years in state prison, the comparable term of punishment that had been set by the determinate sentencing law (DSL). (*Collins*, at p. 216.)

In *People v. Hanson* (2000) 23 Cal.4th 355 (*Hanson*), the Supreme Court considered whether the double jeopardy principles set forth in *Henderson* and its progeny should apply to an increase in a defendant's restitution fine upon resentencing. (*Hanson*, at p. 357.) The Court concluded that such fines constitute punishment and could find "no principled basis for excluding them from the rationale of *Henderson*." (*Hanson*, at p. 357.) In making this determination, the Court expressly rejected the appellate court's conclusion that it could find no cogent reasons in this context to construe the state double jeopardy prohibition any more broadly than its federal

7

counterpart, which generally " 'imposes no restrictions upon the length of a sentence imposed upon reconviction.' " (*Id.* at p. 358, quoting *North Carolina v. Pearce* (1969) 395 U.S. 711, 719 (*Pearce*).) The cogent reason, the Supreme Court reaffirmed, was *Henderson* because its " 'rule . . . protecting defendants from receiving a greater sentence if reconvicted after a successful appeal [citations] is one instance where [the Court has] interpreted the state double jeopardy clause more broadly than the federal clause.' " (*Hanson*, at p. 364; see also *id.* at p. 365 [" 'Although presented with both the opportunity to do so and subsequent clarification of federal constitutional law, the court has never retreated from the rationale or holding of *Henderson.*' "].) Thus, "under California's Constitution the proper focus with respect to resentencing is whether increased punishment operates to penalize the defendant for exercising the right of appeal." (*Id.* at p. 365.)

Indeed, the Supreme Court found the *Henderson* rule so fundamental that it further opined: "[E]ven if we were to find our state double jeopardy clause does not compel the holding in *Henderson*, we would not hesitate to enforce the same rule on alternate state due process grounds." (*Hanson, supra,* 23 Cal.4th at p. 366.) The Court noted that, in *Pearce*, the United States Supreme Court had "attempted to provide a modicum of protection against improper resentencing by cautioning that '[d]ue process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial.' " (*Hanson*, at p. 366.) In our high court's view, however, "vindictiveness is only one of the evils the rule in *Henderson* forestalls. More basically, it is the chilling effect on the right to appeal generated by the risk of a more severe punishment that lies at its core. [Citations.] Moreover, as the [United States] Supreme Court itself acknowledged: 'The existence of a

retaliatory motivation would, of course, be extremely difficult to prove in any individual case.' " (*Hanson*, at p. 366.)  In contrast, the Court cited with approval an Alaska Supreme Court opinion which "[t]ranslat[ed] the rationale of *Henderson* into due process terms."[3]  (*Hanson*, at p. 366.)

More recently, in a case involving a different Henderson, the Supreme Court determined that the trial court was unaware at sentencing under the three strikes law that it had concurrent sentencing discretion when sentencing on qualifying offenses committed on the same occasion or arising out of the same set of operative facts.  It therefore remanded for a full resentencing.  (*People v. Henderson* (2022) 14 Cal.5th 34, 56.)  In doing so, it confirmed that "because ' "a defendant should not be required to risk being given greater punishment . . . for the privilege of exercising his right to appeal" ' [citing *Hanson* and *Ali*], the court on remand may not impose an aggregate sentence greater than the one defendant initially received." (*People v. Henderson*, at p. 56.)

## B.  The Serrato *Exception to Double Jeopardy*

In 1973, the Supreme Court discussed an exception to its double jeopardy precedent in *People v. Serrato* (1973) 9 Cal.3d 753 (*Serrato*),

---

[3] As the Alaska Supreme Court explained:  " '[I]f a more severe sentence may be imposed after retrial for any reason, there will always be a definite apprehension on the part of the accused that a heavier sentence may be imposed. . . . Such deterrence violates the due process clause of the Alaska Constitution.  The fundamental standard of procedural fairness, which is the basic due process right claimed in this case, forbids placing a limitation on the defendant's right to a fair trial by requiring a defendant to barter with freedom for the opportunity of exercising it.  [Citation.]  The state has no valid interest in imposing unreasonable conditions on [a defendant's] legitimate exercise of his [or her] due process right.' " (*Hanson, supra*, 23 Cal.4th at pp. 366–367, quoting *Shagloak v. State* (Alaska 1979) 597 P.2d 142, 145.)

disapproved on another ground as stated in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn.1.  In *Serrato*, the two defendants had been convicted by a jury of felony possession of a firebomb.  (*Serrato*, at p. 756.)  The defendants moved for a new trial and the trial court purported to modify their convictions to misdemeanor disturbing the peace.  It then placed them on probation for two years on the condition that each pay a fine of $125.  (*Id.* at pp. 756–757 & fn. 2.)  The defendants appealed from the order granting probation.  (*Id.* at p. 756.)

Noting that a trial court considering a motion for a new trial is statutorily authorized to "modify the verdict to a lesser degree of the crime found by the jury, or to a lesser crime included therein" (*Serrato*, *supra*, 9 Cal.3d at p. 757 & fn. 3), our high court concluded that the trial court had exceeded its statutory authority and violated due process in the case because disturbing the peace was not a lesser included offense of possession of a firebomb.  (*Id.* at p. 758.)  The Court then turned to the appropriate procedure on remand.  The defendants argued that they were entitled to dismissal or a judgment of acquittal on double jeopardy grounds because the court's action in modifying the verdict was an implied acquittal.  (*Id.* at p. 759.)

In rejecting this claim, the Court began by reciting the "familiar principle" that a defendant who has successfully moved to have a conviction set aside "impliedly waives any objection to being retried" on the original charge.  (*Serrato*, *supra*, 9 Cal.3d at pp. 759–760.)  The Court also acknowledged another well-established rule:  "[W]here a trier of the facts finds the defendant guilty of a lesser degree of the offense charged, or of a lesser included offense, there is an implied acquittal of the greater offense."  (*Id.* at p. 760.)  And it confirmed that "[i]f in lieu of granting a new trial the

10

court decides to modify the verdict to a lesser included offense, and this modified verdict ultimately ripens into a final judgment of conviction, the conviction bars further prosecution of either the offense charged or the lesser offense." (*Id.* at p. 761.)

The Supreme Court determined, however, that if a trial court reviewing a new trial motion concludes that a verdict should be modified to an *uncharged* offense, it should grant a new trial, not an acquittal. (*Serrato, supra*, 9 Cal.3d at p. 762.) The Court continued: "[L]ogic does not reveal any fact-finding which would support a modification to an offense neither charged nor proved. *What appears is that the trial court desired to exercise an unauthorized leniency.* The fact that the court imposed probation and a fine implies the court found that the defendants were guilty of some offense. But if they are not being punished for the offense found by the jury, we have no clue to any other basis of punishment." (*Id.* at pp. 762-763, italics added.)

The Court also rejected the defendant's alternate contention that they were at least protected from more severe punishment under *Henderson* and its progeny. (*Serrato, supra*, 9 Cal.3d at p. 763.) Specifically, it reasoned that, "[i]n the *Henderson* case, as in each of the cited cases which followed it, the sentence imposed after the first trial was a lawful one, within the limits of the discretion conferred by statute for the offense of which the defendant had been convicted. The judgments pronounced at the first trials were reversed because of errors having nothing to do with the sentences." (*Id.* at p. 764.) In contrast, when "a trial court pronounces an unauthorized sentence," the "rule is otherwise. (*Ibid.*) "Such a sentence is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement." (*Ibid.*) The Court gave three examples, all of which

11

involved unauthorized sentences which were impermissibly lenient.  (See *In re Sandel* (1966) 64 Cal.2d 412, 418 [unauthorized concurrent sentence for escape judicially modified to consecutive sentence]; *People v. Massengale* (1970) 10 Cal.App.3d 689, 693 (*Massengale*) [county jail sentences unauthorized where sentencing statute provided for one to ten years in state prison][4]; *People v. Orrante* (1962) 201 Cal.App.2d 553, 558, 566–567 [placement on probation after murder conviction in excess of trial court's jurisdiction; remanded to impose lawful sentence], superseded by statute as stated in *People v. Bailey* (1996) 45 Cal.App.4th 926, 929–930.)  In sum, "a defendant who successfully attacks a judgment which is in excess of the court's jurisdiction is *not necessarily* entitled to claim the protection of that invalid judgment as an absolute limitation upon what the court may do thereafter."  (*Serrato*, at p. 765, italics added.)

Although the Supreme Court noted that, under the circumstances, it would normally remand the case to the superior court for a new hearing on the new trial motion, the Court went on to determine that the superior court had violated the defendants' due process rights at trial by instructing the jury in a way that effectively reversed the burden of proof.  (*Serrato*, *supra*, 9 Cal.3d at pp. 765–767.)  It therefore ordered a new trial.  (*Id.* at p. 765.)  Justice Mosk concurred in part and dissented in part, arguing that whatever "the rationale of the majority opinion, its melancholy result [was] to penalize

---

[4] The *Massengale* court distinguished its situation from that involved in *Henderson*, stating that "such a correction of the judgment is not a penalty imposed upon appellants because of their appeals."  (*Massengale*, *supra*, 10 Cal.App.3d at p. 693.)  Rather the correction in the judgments in that case "would be required whenever the mistake was discovered, regardless of whether or not defendants had appealed."  (*Ibid.*)

these defendants for a successful appeal" in violation of the prohibition against double jeopardy. (*Id.* at pp. 767–768 (conc. & dis. opn. of Mosk, J.).)

In the 50 years since the *Serrato* decision, our high court has returned to the case—in ways relevant to the instant appeal—only a handful of times. In *In re Ricky H.* (1981) 30 Cal.3d 176 (*Ricky H.*), superseded by statute on other grounds as stated in *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396, the Supreme Court was considering a minor's challenge to his Youth Authority commitment when its own review of the record disclosed "several deficiencies" in the dispositional order that had not been raised by the parties.[5] (*Ricky H.*, at pp. 182, 190–191.) For example, it noted that the superior court had imposed a three-year median term for aggravated assault instead of the mandatory four-year upper term. (*Id.* at p. 191.) Citing *Serrato*, the Court stated that "[a]uthority exists for an appellate court to correct a sentence that is not authorized by law whenever the error comes to the attention of the court, even if the correction creates the possibility of a more severe punishment." (*Ricky H.*, at p. 191.) However, given other errors in the dispositional order, the Court concluded that a remand with directions was more appropriate than appellate correction. (*Id.* at pp. 191–192.)

Thereafter, in *People v. Karaman* (1992) 4 Cal.4th 335 (*Karaman*), the Supreme Court cited *Serrato* and *Ricky H.* in dicta for the proposition that "where the court is required to impose a certain minimum term but imposes a lesser term instead, the unauthorized sentence is considered invalid or 'unlawful' and may be increased even after execution of the sentence has begun." (*Karaman*, at p. 349, fn. 15.)

---

[5] Two sustained petitions were before the superior court at the dispositional hearing, involving four counts of burglary, one count of assault by means of force likely to produce great bodily injury, and one count of escape from juvenile hall. (*Ricky H.*, *supra*, 30 Cal.3d at p. 180.)

Next, in *People v. Dotson* (1997) 16 Cal.4th 547 (*Dotson*), the Court considered whether or not a sentence under the three strikes law for a serious felony should include a separate determinate term for enhancements under section 667, subdivision (a). (*Dotson*, at p. 550.) In the trial court, the prosecutor had requested an indeterminate term of 26 years to life and did not argue that the enhancements should be imposed as a separate determinate term. The Supreme Court nevertheless reached the issue via a petition for review. (*Id.* at pp. 553–554 & fn. 6.) Citing *Serrato*, *Ricky H.*, and *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*), the Court opined: "A claim that a sentence is unauthorized . . . may be raised for the first time on appeal[] and is subject to judicial correction whenever the error comes to the attention of the reviewing court." (*Dotson*, at p. 554, fn. 6; see also *Scott*, at p. 354 [discussing exception to waiver rule for unauthorized sentences and noting that "a sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case"].) The Court went on to conclude that a consecutive 20-year determinate term should have been imposed in the case and remanded to the trial court for appropriate resentencing. (*Dotson*, at pp. 557–560.)

In *Hanson*, *supra*, 23 Cal.4th 355, discussed above, the Supreme Court cited *Serrato* in a footnote contrasting the *Henderson* rule with the situation in which a defendant seeks to withdraw a guilty plea or repudiate a plea bargain. (*Hanson*, at p. 360 & fn. 2.) In *Serrato,* the Supreme Court had described its prior opinion in *In re Sutherland* (1972) 6 Cal.3d 666. There, the defendant pleaded guilty to one count, the prosecutor moved to dismiss the four remaining counts, and his motion was granted. The Supreme Court recognized that, by granting relief it was in effect permitting the defendant to withdraw his guilty plea. Under such circumstances, it concluded that " 'the

14

ends of justice require[d] that the *status quo ante* be restored by reviving the four dismissed counts.' " (*Serrato, supra*, 9 Cal.3d at p. 765.)

Finally, in *People v. Carbajal* (2013) 56 Cal.4th 521 (*Carbajal*), the defendant was charged with sexually molesting two victims. A jury convicted the defendant of some counts involving one victim while deadlocking on all counts involving the other victim. Nevertheless, it initially returned a true finding on a multiple victim special allegation. With some coaching from the trial judge, the jury next came back with a not true finding with respect to the allegation and then later stated they were deadlocked on it. A second jury subsequently convicted the defendant of counts involving the other victim and found true the multiple victim allegation. (*Carbajal*, at p. 525.) The question before the Supreme Court was whether retrial on the multiple victim allegation was barred by double jeopardy. (*Ibid*.) The Court concluded it was not, reasoning: "Because the [first] jury could not have returned any valid verdict on the multiple victim allegation, double jeopardy did not bar retrial on that allegation. (Cf. *People v. Serrato* (1973) 9 Cal.3d 753, 764 [when sentence imposed is not just erroneous but entirely unauthorized, state constitutional double jeopardy clause does not prohibit subsequent imposition of more severe sentence].)" (*Carbajal*, at p. 535.)

## C. *Appellate Court Applications of* Serrato *Exception*

Post-*Serrato*, appellate courts have handled unauthorized sentences in various ways. For example, in 1984 our colleagues in Division Two of this District addressed a situation where a defendant had been sentenced consecutively for both rape (six years) and kidnapping for the purpose of rape (five years) in violation of section 654. (*People v. Burns* (1984) 158 Cal.App.3d 1178, 1181 (*Burns*).) In considering the appropriate remedy for this error, the court noted that a defendant's aggregate prison term under the

15

determinate sentencing law (DSL) " 'cannot be viewed as a series of separate independent terms, but rather must be viewed as one prison term made up of interdependent components. The invalidity of some of those components necessarily infects the entire sentence . . . . In making its sentencing choices in the first instance the trial court undoubtedly considered the overall prison term to be imposed.' " (*Id.* at 1183.) The trial court was therefore allowed to reconsider its entire sentencing scheme on remand. "However, in order to 'preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal' [citation]," the appellate court concluded, citing *Henderson*, that Burns could not be "sentenced on remand to a term in excess of his original sentence." (*Burns*, at p. 1184.)

Several years later, the Fifth District considered the propriety of resentencing a sexual offender to 50 years in prison on remand from an unauthorized sentence of 37 years. (*People v. Price* (1986) 184 Cal.App.3d 1405, 1407 (*Price*).) Given the exemplar cases discussed in *Serrato*, and the *Serrato* Court's analogizing of those cases to the situation where a negotiated plea is set aside (which requires restoration of any dismissed counts), the appellate court in *Price* concluded that the holding in *Serrato* "vindicates the People's right to imposition of a proper sentence." (*Price*, at p. 1409; see also *Serrato*, *supra*, 9 Cal.3d at pp. 764–765.) It therefore concluded that, in order to determine if the sentencing court on remand properly could impose a harsher sentence, it was required to characterize the sentencing errors which occurred at the first sentencing. Some identified sentencing errors "could not result in a greater overall term on the sentencing" and thus "did not produce unauthorized sentences." (*Price*, at p. 1409.) In contrast, the appellate court found two unauthorized errors in the initial sentencing: the failure to impose a consecutive sentence on one robbery count and the failure to impose

16

weapons enhancements on three counts due to a misunderstanding regarding the application of section 654. (*Price*, at pp. 1409, 1411–1412 ["Where a court mistakenly stays punishment under section 654, the stay operates to defeat the otherwise mandated sentence which the court must impose."].) Turning to the propriety of the resentencing, the *Price* court concluded that the sentencing court had fixed the unauthorized sentencing errors and that the resulting increases in punishment were "condoned under the *Serrato* rule." (*Price*, at p. 1412.) As for the sentencing choices that were not unauthorized but "were defectively supported in the first appeal," the court found the sentences on remand "to be no harsher than before" and therefore appropriate. (*Ibid.*)

The court, however, did find error in the trial court's treatment of the two robbery convictions on remand, reasoning as follows: "The *Serrato* rule protects the People's right to mandated, lawful sentences. The limitations of the rule 'rebut' any appearance of vindictiveness. If an increase in penalty has no nexus to the original illegality in the sentence, the protection against vindictiveness is not applicable. The general rule applies that in California a harsher penalty may not be imposed after a successful appeal." (*Price*, *supra*, 184 Cal.App.3d at p. 1413.) The defendant in *Price* had originally been sentenced to concurrent middle terms on each of two robbery counts and that "sentence was neither attacked on appeal, nor criticized" in the court's prior opinion in the matter. On remand, the court imposed the upper term on one count and ran the second count consecutively. The court concluded: "These three additional years (the difference between the three-year midterm to a five-year upper term (two years) and the addition of one-third of the midterm (one year)) were not corrections of 'illegalities' in the original sentence. 'Illegalities' requiring resentencing permit the imposition of a harsher

17

punishment. Those portions of the sentence were unaffected by 'illegality' and cannot be increased in punishment." (*Ibid.*) The *Price* court determined that remand for resentencing was unnecessary because there was no reasonable likelihood that on remand the court would impose the lower term on the principal robbery conviction. (*Ibid.*) It therefore ordered the principal robbery term reduced to three years and the second robbery sentence to be run concurrently, reducing the defendant's total term from 50 to 47 years. (*Ibid.*)

In *People v. Hill* (1986) 185 Cal.App.3d 831 (*Hill*), the defendant pleaded guilty to four counts of child molestation (two counts with respect to each of the two victims) and was initially sentenced to an aggregate term of 16 years—two consecutive upper terms of eight years and two concurrent terms of six years. (*Id.* at p. 833.) After being notified by the Department of Corrections that the sentence was erroneous, the court resentenced the defendant to eight years on the principal count and consecutive two-year terms (one-third of the midterm) on each of the three remaining counts, for a total of 14 years. (*Ibid.*) On appeal, the defendant argued that the trial court should have modified the erroneous portion only (the second eight-year term), and that the court was without authority to resentence on the two counts that were initially run concurrently. (*Ibid.*) The Second District disagreed.

Specifically, the *Hill* court reasoned: "When a case is remanded for resentencing by an appellate court, the trial court is entitled to consider the entire sentencing scheme. Not limited to merely striking illegal portions, the trial court may reconsider all sentencing choices. [Citations.] This rule is justified because an aggregate prison term is not a series of separate independent terms, but one term made up of interdependent components. The invalidity of one component infects the entire scheme." (*Hill, supra,* 185

18

Cal.App.3d at p. 834.) Thus, "[t]he trial court is entitled to rethink the entire sentence to achieve its original and presumably unchanged goal." (*Ibid.*) In reaching this conclusion, the *Hill* court found *Serrato*, *Ricky H.*, and *Ali* inapplicable because the defendant's aggregate sentence was not increased upon resentencing. (*Hill* at p. 836.) It concluded that the defendant's "initial sentence was illegal and therefore void. Upon recall the trial court had the jurisdiction to impose a sentence which it could have imposed at the time the original sentence was given." (*Ibid.*)

Division Two of this District revisited *Henderson* through the lens of *Serrato* in 1987. (See *People v. Brown* (1987) 193 Cal.App.3d 957 (*Brown*).) In *Brown*, the defendant had been convicted of two counts of attempted grand theft from a person and initially sentenced to 46 months in state prison. On appeal, the conviction was affirmed but the appellate court concluded that the 46-month sentence was improper in that it exceeded the double the base term limitation in the DSL. The matter was remanded for resentencing after which the defendant was sentenced to a 48-month term. The defendant again appealed, contending that the imposition of a longer sentence on remand impermissibly penalized him for his successful appeal and violated the prohibition against double jeopardy. (*Id.* at p. 960.) The appellate court disagreed.

After noting the "general rule" that "a greater sentence may not be imposed upon remand after an appeal," the court considered the *Serrato* exception which provides that "an unauthorized sentence 'is subject to being set aside judicially and is no bar to the imposition of a proper judgment thereafter, even though it is more severe than the original unauthorized pronouncement.' " (*Brown, supra,* 193 Cal.App.3d at p. 962.) The court read *Serrato* as "set[ting] up a distinction between resentencing upon retrial

19

necessitated by an error not involving the sentence and resentencing necessitated by the illegality of the original sentence, allowing imposition of a greater sentence only in the latter situation." (*Brown*, at p. 962.) While the court was critical of *Serrato*, it recognized that it was bound to follow it. (*Brown*, at pp. 961–962.) Deeming the initial sentence unauthorized because it exceeded a statutory limitation, the court concluded it was not error to impose a harsher sentence on remand. (*Id.* at p. 962.)

In *People v. Mustafaa* (1994) 22 Cal.App.4th 1305 (*Mustafaa*), the Fourth District considered the validity of the defendant's sentence of 14 years, four months after he pleaded guilty to three counts of robbery while personally armed with a firearm and three counts of possession of a firearm by a felon. He also admitted suffering three prior felony convictions. (*Id.* at p. 1309.) The appellate court concluded that the trial court erred in imposing consecutive terms for two gun-use enhancements, while imposing concurrent terms for the robbery convictions in the same counts. (*Ibid.*) Since "fashioning a sentence in a manner which is unauthorized by law exceeds the jurisdiction of the court," the defendant could raise the issue on appeal even though no objection was made in the trial court. (*Id.* at p. 1311.) In discussing the proper procedure on remand, the court rejected the argument that the *Serrato* exception applied, reasoning: "[T]he rule against double jeopardy applies because the court imposed a legal aggregate sentence, only fashioning it in an unauthorized manner. The court's error in separating the convictions from their attendant enhancements, though unauthorized by law, does not make the total sentence illegal. On remand the court may not impose a total sentence more severe than the sentence originally imposed." (*Mustafaa*, at pp. 1311–1312.)

In *People v. Craig* (1998) 66 Cal.App.4th 1444 (*Craig*), Division Four of this District found no double jeopardy issue where the defendant—who had successfully appealed from a prior conviction—was sentenced after retrial to a greater term for the offense, but the aggregate term (which included enhancements) did not exceed that imposed at his initial sentencing. (*Id.* at pp. 1446, 1448.) At the initial sentencing, the defendant was sentenced to the mitigated term of two years for burglary along with five years for each of five prior serious felonies, for a total of 27 years. On retrial, only three prior felonies were proved, and the defendant was sentenced to the midterm of four years on the burglary plus 15 years for the three enhancements, for a total of 19 years. (*Id.* at p. 1446.) The defendant contended in a second appeal that it was impermissible under the due process clause of our federal Constitution and under the double jeopardy provisions of our state Constitution for the trial court at the second sentencing to impose four years for the burglary when at the initial sentencing it had imposed only two years for that offense. (*Id.* at p. 1447.) The appellate court noted that "one of the consistent concerns of our state courts in looking at double jeopardy issues in the context of a sentence imposed after a successful appeal has been the related due process concern of whether an increased punishment reflects a vindictive retaliation for defendant's having taken a successful appeal." (*Ibid.*) It thus considered the defendant's due process challenge within the double jeopardy framework. (*Ibid.*)

After a survey of relevant precedent, the court concluded that, under double jeopardy principles, a defendant may not upon reconviction be subjected to an *aggregate sentence* greater than that imposed at the first trial. Since the defendant's sentence had been reduced from 27 years to 19 years, no double jeopardy issue was found. (*Craig*, *supra*, 66 Cal.App.4th at

21

pp. 1447–1448.) In making this determination, the court distinguished *Price*—which the defendant argued supported his contention that his sentence should be viewed as a series of components for double jeopardy purposes—because *Price* held that it was impermissible to increase on remand a robbery term that had neither been attacked on appeal nor criticized in its earlier opinion as unlawful. In the court's view, *Price* was inapplicable because the case as a whole fell within the *Serrato* exception for unauthorized or unlawful sentences.[6] (*Craig*, at p. 1450; see also *People v. Burbine* (2003) 106 Cal.App.4th 1250 [citing *Craig* in holding that a defendant can receive the same aggregate prison term upon resentencing for a multi-victim felony conviction even where one count was reversed on appeal; any sentence permitted under the applicable statutes and rules may be imposed on remand, subject only to the limitation that the original aggregate prison term could not be increased].)

A final example is found in *People v. Torres* (2008) 163 Cal.App.4th 1420 (*Torres*) where the defendant was convicted of one count of attempting to dissuade a witness and one count of criminal threats, both with an attached gang enhancement. At sentencing, the court struck the gang enhancements, imposed the aggravated term of seven years on the criminal threat count, and imposed but stayed the mid-term on the other count. (*Id.*

---

[6] Specifically, the *Craig* court asserted: "*Price* is an example of the exception to the general rule of *Henderson* that an unlawful or unauthorized sentence may be increased without offending double jeopardy. The *Price* court, however, carefully tailored that exception to the facts before it, according defendant the benefit of double jeopardy protection for the portions of his sentence which were not unlawful or unauthorized. Accordingly, *Price* is not authority for the proposition that an aggregate sentence which does not offend *Henderson* must be broken into its components each one of which carries on resentencing the upper limit of that term which was originally imposed. (*Craig*, at p. 1450.)

22

at pp. 1421, 1427.) More than a year later, the Department of Corrections sent a letter to the trial court informing it that the sentencing triad for the criminal threats count was 16 months, two years, or three years. (*Id.* at p. 1427.) Thus, the court's seven-year sentence was unauthorized. At the resentencing, the trial court declined to stay the gang allegations. It sentenced the defendant to an indeterminate term of seven years to life on the criminal threats count. The court imposed and stayed a seven-year term with respect to the other count. (*Id.* at p. 1428.)

The Fifth District reviewed double jeopardy cases as well as cases involving the *Serrato* exception and concluded: "In all of the . . . cases, the defendant either received a sentence equal or lesser than his original sentence[] or received a greater sentence only when the court's sentence demonstrated legally unauthorized leniency that resulted in an aggregate sentence that fell below that authorized by law." (*Torres*, *supra*, 163 Cal.App.4th at p. 1432.) It concluded that its case was similar to *Mustafaa,* explaining: " 'In Mustafaa's case the rule against double jeopardy applie[d] because the court imposed a legal aggregate sentence, only fashioning it in an unauthorized manner. The court's error in separating the convictions from their attendant enhancements, though unauthorized by law, [did] not make the total sentence illegal. On remand the court [could] not impose a total sentence more severe than the sentence originally imposed.' " (*Torres*, at p. 1432.) The *Torres* court concluded that, since the aggregate sentence of seven years imposed on defendant at the original sentencing hearing in that case could have been lawfully achieved, principles of double jeopardy required a remand at which the trial court could not impose a total sentence greater than seven years in prison. (*Id.* at pp. 1432–1433.)

23

### D. The Serrato *Exception Does Not Apply*

As stated above, Trammel and the Attorney General disagree as to whether the *Serrato* exception applies in this case, authorizing a harsher sentence on remand. While we conclude that Trammel largely has the better argument on this record, our analysis of the question took longer and was more nuanced than we originally anticipated. Having discovered the lack of consistency among appellate courts analyzing these issues as set forth above, we offer our own interpretation of how *Serrato* should be applied at resentencing.

Preliminarily, we would like to dispel some confusion that has arisen in this and other cases by use of the term "unauthorized sentence." (See, *e.g.*, *People v. King* (2022) 77 Cal.App.5th 629 [appearing to misapprehend the various attributes of an unauthorized sentence and limiting it to a waiver concept].) In *Scott*, *supra*, 9 Cal.4th 331, our Supreme Court discussed generally "the venerable notion that claims involving 'unauthorized,' 'void,' or 'excessive' sentences, and sentences entered in 'excess of jurisdiction,' can be raised at any time." (*Id.* at p. 354.) In doing so, it held that, for waiver purposes, "a sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case. Appellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record at sentencing." (*Ibid.*) As an example, the *Scott* Court indicated it is "well settled . . . that the court acts in 'excess of its jurisdiction' and imposes an 'unauthorized' sentence when it erroneously stays or fails to stay execution of a sentence under section 654." (*Scott*, at p. 354, fn. 17.) *Scott*, however, is a waiver case. It has nothing to do with whether a sentence is unauthorized for purposes of the *Serrato* exception. As we discuss further below, while the two

24

concepts may overlap in certain cases, both the analyses and the consequences under *Scott* and *Serrato* are distinct.

Next, we join our Division Two colleagues in finding aspects of *Serrato* troubling. For example, the distinction between sentencing illegalities and other errors seems dubious when viewed in the context of our double jeopardy precedent: "[A] defendant is penalized as much for bringing a successful appeal if he or she is left subject to imposition of a greater sentence when the basis of the appeal is sentencing error as when the basis is error relating to the conviction." (*Brown*, *supra*, 193 Cal.App.3d at p. 961.) In addition, as our survey of the caselaw makes clear, it is not always easy to distinguish illegal sentences for *Serrato* purposes from sentences that are erroneous for some other reason and/or determine how mixed sentences should be treated. (See *Brown*, at pp. 961–962 [citing cases]; see, e.g., *Craig*, *supra* 66 Cal.App.4th 1444; *Mustafaa*, *supra*, 22 Cal.App.4th 1305; *Hill*, *supra*, 185 Cal.App.3d 831; *Price*, *supra*, 184 Cal.App.3d 1405.) Finally, "the *Serrato* distinction leads to an anomalous result in the context of appeals, as a defendant is encouraged to appeal an erroneous but authorized sentence and penalized for appealing an outright illegal one. This result is contrary to the established principle that '[since] the state has no interest in preserving erroneous judgments, it has no interest in foreclosing appeals therefrom by imposing unreasonable conditions on the right to appeal.'" (*Brown*, at p. 962, quoting *Henderson*, *supra*, 60 Cal.2d at p. 497 & citing *Serrato*, *supra*, 9 Cal.3d at p. 767 [Mosk, J., conc. and dis. opn.].) Nevertheless, since the Supreme Court has not retracted *Serrato* in the last 50 years, we are bound to follow it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) We therefore turn to the question of how it should be applied in this case.

In our prior opinion, we found two instances where the trial court erroneously failed to stay sentences under section 654, and we also suggested that Trammel could raise any additional section 654 challenges upon remand for resentencing. At the resentencing hearing, the trial court corrected the errors we identified by choosing to stay two simple assault counts (counts VIII and X, both 180 days). The court also stayed the sentences for the count V vandalism charge (one year), the count VIII simple assault charge (180 days), and the count II criminal threats charge (eight months) on section 654 grounds. Sentences for count I (18 months), count VII (one year plus one year for related enhancement), and count XI (8 years) remained the same, but were imposed after full consideration of the recent changes in the sentencing laws. The court changed the concurrent three-year sentence on count XII to a concurrent one-year term and the concurrent three-year sentence on count IX to a consecutive one-year term.

In sum, all of the section 654 violations that were corrected by the trial court resulted either in no change or a decrease in Trammel's aggregate sentence. The extra four months the court imposed at resentencing were the result of the trial court swapping the eight-month criminal threats charge (count II), which the court stayed, with a consecutive sentence of one year on count IX, which the judge reduced from three years and made consecutive instead of concurrent. The sentence for count IX was permissible both when originally imposed and when modified upon resentencing. The question, then, is whether an erroneous sentence under section 654 which improperly *inflated* Trammel's aggregate sentence falls within the *Serrato* exception, thus allowing a harsher sentence on remand. We conclude that it does not.

When the *Serrato* Court discussed the exception to *Henderson* it was articulating, it listed three cases as examples of the problem it was

26

addressing. (*Serrato, supra*, 9 Cal.3d at pp. 764–765.) In all of those cases, the unauthorized sentence imposed was erroneously *lenient*. (*Ibid*.) As was the sentence that *Serrato*, itself, was reviewing. (*Id*. at p. 756; see *id*. at pp. 762–763 ["What appears is that the trial court desired to exercise an unauthorized leniency."].) Moreover, the *Serrato* Court stated that the situation with which it was presented was analogous to cases in which a conviction based upon a negotiated guilty plea is set aside, where the ends of justice required that counts dismissed by the prosecutor be restored. (*Id*. at p. 765.) Under these circumstances, we agree with the appellate court in *Price* that "[t]he holding in *Serrato* vindicates the People's right to imposition of a proper sentence." (*Price, supra*, 184 Cal.App.3d at p. 1409; accord, *Torres, supra*, 163 Cal.App.4th at pp. 1429-1432; *Craig, supra*, 66 Cal.App.4th at p. 1449.) Thus, the *Serrato* exception only applies to unauthorized sentences which were unlawfully lenient to the detriment of the People. (Cf. *Karaman, supra*, 4 Cal.4th at p. 349 & fn. 15 [contrasting the situation where a trial court may not increase a valid sentence after it has commenced with *Serrato* and *Ricky H.,* stating: "[W]here the court is required to impose a certain minimum term but imposes a lesser term instead, the unauthorized sentence is considered invalid or 'unlawful' and may be increased even after execution of the sentence has begun."].)

We also find support for the conclusion that *Serrato* applies only to unauthorized, lenient sentences in the Supreme Court's decision in *Collins*. There, as discussed above, the defendant's plea bargain was effectively set aside through no fault of his own. The Court discussed the rights of both the prosecution and the defendant in this circumstance, and, citing *Henderson* for the "long recognized" principal that "the state has no interest in preserving erroneous judgments," the Supreme Court concluded that the rights of the

27

prosecution and the defendant could best be protected by permitting the state to revive one or more of the dismissed counts but limiting the defendant's potential sentence to not more than three years in state prison, the comparable term of punishment that had been set by the DSL. (*Collins, supra*, 21 Cal.3d at pp. 214–216.) We read this case as standing for the proposition that a defendant's double jeopardy rights may be narrowly impacted when necessary to protect the People's right to a proper sentence.

A narrow interpretation of *Serrato* also minimizes many of the problems with the exception identified in *Brown*. For instance, a defendant may be penalized for appealing only in those limited situations where an erroneously lenient judgment impedes the People's right to a proper sentence. And a defendant is still encouraged to appeal unauthorized, excessive sentences. Moreover, we believe this construction of *Serrato* is more straightforward in application. At a resentencing, the trial court must first consider whether any unauthorized portions of the sentence were impermissibly lenient to the detriment of the People. If they were, a harsher sentence may be imposed at resentencing, *but only to the extent necessary to correct those errors*. Next, we agree with the cases which conclude that an aggregate prison term " 'cannot be viewed as a series of separate independent terms, but rather must be viewed as one prison term made up of interdependent components.' " (*Burns, supra*, 158 Cal.App.3d at p. 1183; accord, *Hill, supra*, 185 Cal.App.3d at p, 834.) Thus, the resentencing court is permitted to reconsider all of its discretionary sentencing choices.[7] For

_____

[7] At first blush, certain statements in *Price* may seem contrary to this conclusion. Specifically, the *Price* court faulted the trial court for increasing on resentencing the sentences for two robbery counts "neither attacked on appeal, nor criticized" in the court's prior opinion in the matter. (*Price, supra*, 184 Cal.App.3d at p. 1413.) The court concluded: "These three additional years (the difference between the three-year midterm to a five-

28

example, it could choose to decrease other components of the sentence to compensate for the increase required under *Serrato* and reach an identical or lower sentence. But under no circumstances should the aggregate sentence be more than the sum of the original sentence and the mandatory increase required due to the *Serrato* errors.

Since, in this case, the unauthorized sentences were erroneously harsh or neutral rather than lenient, the *Serrato* exception does not apply. Consequently, while the trial court was allowed to reconsider all of the other elements of Trammel's sentence, under *Henderson* and its progeny it could not impose an aggregate sentence greater than the original sentence of 12 years. The 12 year, four month sentence the court imposed on resentencing thus violates the California Constitution's prohibition against double jeopardy.

## E. Appropriate Remedy

Trammel asks that we remand this matter for another full resentencing, this time before a different judge pursuant to Code of Civil Procedure section 170.1, subdivision (c) and *People v. Swanson* (1983) 140 Cal.App.3d 571 in order to avoid any appearance of unfairness. We decline to do so. As stated above, we have reviewed the trial court's resentencing proceedings and see no evidence of vindictiveness. Rather, the court

year upper term (two years) and the addition of one-third of the midterm (one year)) were not corrections of 'illegalities' in the original sentence. 'Illegalities' requiring resentencing permit the imposition of a harsher punishment. Those portions of the sentence were unaffected by 'illegality' and cannot be increased in punishment." (*Ibid.*) Having reviewed both *Price* and the prior opinion in the matter (*People v. Price* (1984) 151 Cal.App.3d 803) it appears that *Price* may have been objecting to these additional increases because they went beyond those which had already been implemented to correct the identified *Serrato* errors. Read as such, it supports our suggested approach to *Serrato* error.

understood it was engaged in a full resentencing, thoughtfully considered all of the arguments raised by the parties, and then articulated its reasons for imposing sentence on each sentencing component. Moreover, the court did this fully aware of the discretion it possessed under certain new changes in the law as well as the additional requirements established by other statutory changes. The imposition of the additional four months does not appear to have been vindictive. Rather, it seems that the court simply imposed the one-year consecutive term on count IX to compensate for its decision to stay the eight month sentence for count II. Given the legal uncertainties in this area, it is certainly understandable that the court mistakenly believed this small increase in the aggregate sentence was permissible.

We thus see no need for another resentencing before a different judge. Nor do we see any reasonable likelihood that on remand this trial court would impose an aggregate term appreciably different than the maximum allowable 12 years. (See *Price*, *supra*, 184 Cal.App.3d at p. 1413, citing *People v. Avalos* (1984) 37 Cal.3d 216, 233.) Under the circumstances, we will exercise our authority to modify the judgment by making the term imposed on count IX run concurrently rather than consecutively, for a total aggregate term of 11 years, four months. (§ 1260; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1473.)

Finally, both parties agree that the amended abstract of judgment in this case failed to accurately reflect Trammel's total custody credits at the time of resentencing. The trial court confirmed at resentencing that, as of November 6, 2020, Trammel had 311 presentence credits and 311 conduct credits. As of the resentencing on November 23, 2022, the court found that he had total custody credits of 1,054 days. It stated it was going to "indicate that Mr. Trammel has 1,054 actual custody credits and allow the Department

30

of Corrections to determine the conduct credits." But the amended abstract only sets forth the original presentence credits of 622 days (311 custody/311 conduct). This was error. (See § 2900.1 ["Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts."]; see also *People v. Buckhalter* (2001) 26 Cal.4th 20, 23 [concluding that, at resentencing, the trial court must recalculate and credit the actual time the defendant had served prior to the modification].) We will therefore also instruct the trial court to include in its second amended abstract of judgment the actual total custody credits to which Trammel was entitled at the time of his resentencing.

## III. DISPOSITION

The matter is remanded to the trial court with instructions to modify the sentence on count IX to run concurrently rather than consecutively, to impose a total aggregate sentence of 11 years, four months, and to determine Trammel's actual total custody credits as of November 23, 2022. The court shall order the clerk of the superior court to prepare a second amended abstract of judgment memorializing these changes and transmit a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

BOWEN, J.*

WE CONCUR:


HUMES, P. J.


MARGULIES, J.


A166756P


---

\* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

San Francisco County Superior Court

Hon. Teresa M. Caffese

Counsel:

Law offices of Bess Stiffelman, Bess Stiffelman under appointment by the Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Melissa A. Meth, Deputy Attorney General, Jalem Z. Peguero, Deputy Attorney General for Plaintiff and Respondent.